IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Don's Hydraulics, Inc.<br>　　　　Plaintiff<br><br>vs.<br><br>Colony Insurance Company and<br>Truck Tech Industries, Inc., and<br>Tipco Technologies, Inc. | Civil Action No.: 04-1275 |

### DEFENDANT, COLONY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

*Attorneys for Colony Insurance Company*

Anthony A. Figliola, Jr. (I.D. # 957)
FIGLIOLA & FACCIOLO
1813 Marsh Road, Suite A
Wilmington, DE 19810
(302) 475-0460


Joseph M. Toddy
ZARWIN BAUM DeVITO KAPLAN SCHAER TODDY
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 569-2800


Dated: 6/7/05

I.     **INTRODUCTION**

This case arises from an incident that occurred in September 2003, in which Plaintiff, Don's Hydraulics ("Don's"), incurred damages while performing work on a hydraulic power unit for a customer of Don's. As a result of the damages, Don's seeks to recover from Defendant, Colony Insurance Company, under a Commercial General Liability Insurance Policy.

Don's initiated this action in the Superior Court of Delaware, Sussex County. On September 17, 2004, this case was properly removed to this Court due to diversity of citizenship. Because there are no genuine issues of material facts as to Defendant, Colony Insurance Company's liability to the claims made in this action, Colony files this Motion for Summary Judgment.

II.    **FACTS**

In September 2003, Don's, performed work on a hydraulic power unit for Fieldale Farms, located in Gainesville, Georgia. At the time the work was performed, Don's was covered by a Commercial General Liability Insurance Policy ("the policy") issued by Defendant, Colony Insurance Company ("Colony"). Exhibit "A". The policy was in effect from July 28, 2003 until July 28, 2004. The work at Fieldale Farms required Don's Hydraulics to purchase twenty suction hoses for use with pumps supplied by Don's for the project. On August 7, 2003, Don's placed an order with Truck Tech Industries, Inc. ("Truck Tech") for the purchase of twenty hoses to be used as pump suction hoses for the Fieldale Farms project. *See* Plaintiff's Response to Interrogatory number 2, attached hereto as Exhibit "B". The hoses were manufactured by Tipco Technologies, Inc. ("Tipco") at the request of Truck Tech. Upon receipt of the hoses, Don's became

1

concerned when it was discovered that the internal stems would turn inside the hoses. Don's returned the hoses to Truck Tech and waited for replacement hoses. At a later point Truck Tech provided replacement hoses to Don's, however, theses hoses were also returned by Don's. Finally, on August 24, 2003, one day before Don's pumps and hoses were due to be shipped to Fieldale Farms, Don's received from Truck Tech a third set of hoses. After examining the hoses, Don's felt these hoses were suitable for the job and accepted them. Exhibit "B".

Upon installation of the pumps and hoses at the Fieldale Farms project, Don's noticed a lot of air in the system and feared it was due to the hoses. He contacted Truck Tech for advice on how to handle the situation. Attempts to repair the situation failed and the leaks in the hoses eventually allowed air into the pumps resulting in damage to the hoses, pumps and hydraulic power unit. Exhibit "B" The damage caused Fieldale Farms to shut down the plant during the repair period. Exhibit "D".

As a result of the damages incurred by the faulty hoses, Don's incurred over $200,000 in damages. After unsuccessful attempts to collect the damages from Truck Tech and Tipco, Don's now seeks reimbursement under the commercial general liability insurance policy issued by Colony. Exhibit "C". Specifically, Don's seeks to recover $92,168.52[1] plus interest for costs to perform repairs to the hydraulic power unit, $100,774.50 for costs incurred by Fieldale Farms for having to shut down the plant for the necessary repairs, and $15,357.74 for the cost to replace the defective pumps. Exhibit "D". Of the $100,774.50 cost incurred by Fieldale Farms for having to shut down the plant during the repair, Colony had paid $16,569.60 under the policy. Exhibit "E".

---

[1] The itemized list attached to Mr. Tighe's February 12, 2004 letter, attached hereto as Exhibit "D", and referenced in the letter totals $94,229.05, which is $2,060.53 greater than the amount demanded by Mr. Tighe in his letter.

This amount represents the cost to clean up the oil spill that resulted from the pumps failure. Coverage for the oil spill clean up is provided for by the policy. All of the costs Don's seeks to recover are specifically excluded by the terms of the policy. As such, Colony has no liability to Don's and summary judgment in favor of Colony is proper.

### III.  LEGAL ARGUMENT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, "a party against whom a claim ... is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.C.P. 56(c). When deciding summary judgment motions, the court cannot weight evidence or make credibility determinations. The court must only determine whether there is a genuine issue of fact for trial. *Anderson et al. v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") To defeat summary judgment the adverse party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Under Rule 56(e) an adverse party "may not rest upon the mere allegations or denial of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. Rule Civ.

3

Proc. 56(e). Therefore, a mere scintilla of evidence in support of the non-moving party is insufficient, and a court may not deny summary judgment. *Anderson et al. v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Regarding disputes involving insurance policies, the Third Circuit has held the construction of an insurance policy is a question of law for the court to decide. *J.C. Penney Life Ins. Co. v. Christian J. Pilosi*, 393 F.3d 356 (3rd Cir. 2004)("The interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court…."); *CIGNA Ins. Co., v. Didimoi Property Holdings*, 110 F. Supp. 2d 259 (2000)("The interpretation of insurance contracts is a question of law.") The purpose of interpreting an insurance contract "is to give effect to the mutual intention of the parties." *XL Specialty Ins. Co. v. Envision Peripherals, Inc.*, 2003 U.S. Dist. LEXIS 768, *8 (2005). When interpreting an insurance contract the court must "construe the policy as a whole, and its provisions in their full context." *Id*. The rights and responsibilities of the parties under the policy are dictated by the terms of the policy. *CIGNA Ins. Co., v. Didimoi Property Holdings*, 110 F. Supp. 2d 259, 264 (2000). When interpreting the policy at issue in this case, it is clear that the damages sought to be recovered by Don's were specifically excluded by the policy. Therefore, because this case involves the interpretation of an insurance contract and no genuine issue of material fact exists, Colony's motion for summary judgment is proper and must be granted.

For the period July 28, 2003 until July 28, 2004, Don's was insured under a Commercial General Liability Insurance Policy (Policy No. GL 123393) issued by Colony. Exhibit "A" This policy provides a $500,000 per occurrence liability limit with a

4

$1,000,000 policy aggregate, for general liability. Under the policy, Colony is obligated to pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", provided the "injury" or "damage" was the result of an accident that occurred during the policy period. *See* Section I of the policy attached hereto as Exhibit "A." The parties do not dispute that the incident giving rise to the damages incurred by Don's occurred during the policy period. Where the dispute arises is whether the damages are excluded from coverage under the policy.

The rights and responsibilities of Colony and Don's under the policy are dictated by the terms of the policy. *CIGNA Ins. Co. v. Didimor Property Holdings,* 110 F. Supp. 2d 259, 263 (2000). If the language of the policy is clear and unambiguous, Colony and Don's will be bound by the terms of the policy. *Id.* 264. The terms of the policy at issue clearly and unambiguously exclude from coverage the type of damages Don's is attempting to recovery from Colony.

The policy provides, "We [Colony] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Exhibit "A" Due to exclusions that are clearly and unambiguously stated in the policy, the damages alleged by Don's are not covered by the policy. The policy states:

> 2. **Exclusions**
> This insurance does not apply to:
>
>> j. **Damage To Property**
>> "Property damage" to:
>> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

      **k.**    **Damage To Your Product**
            "Property damage" to "your product" arising out of it or any part of it.

      **l.**    **Damage To Your Work**
            "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

See Section I (2) of Exhibit "A".

Property Damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." See Section V (17) of Exhibit "A". Your Product is defined as "(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; (b) Others trading under your name; or (c) A person or organization whose business or assets you have acquired...." See Section V (21) of Exhibit "A". And finally, Your Work is defined as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." See Section V (22) of Exhibit "A". These defined terms are commonly used in Insurance Services Office ("ISO") policies, such as the policy in this case, and have been held to be clear and unambiguous. In *Massachusetts Bay Ins. Co. v. Bushmaster Firearms, Inc.*, 324 F. Supp. 2d 110 (Dist. Maine 2004), the issue involved whether the insured was entitled to coverage under a commercial general liability policy for injuries resulting from the insured's product or whether the injuries were excluded under the products-completed operations hazard exclusion. In finding the product was excluded from coverage under the products-completed operations hazard exclusion, the court granted the insurer's request for summary judgment. It should be noted that the terms "your product" and "your work",

6

as used in *Bushmaster*, are defined identical the terms in the present policy. Regarding the definition of these terms, the court in *Bushmaster* held, "[t]here is no ambiguity in the language." *Massachusetts Bay Ins. Co. v. Bushmaster Firearms, Inc.*, 324 F. Supp. 2d 110, 112 (Dist. Maine 2004).

As set forth in a February 12, 2004 letter from Don's attorney, Michael Tighe, to Colony, Don's spent $92,168.52 to "repair the hydraulic power unit." Exhibit "D". Additionally, Don's received an invoice from Fieldale Farms in the amount of $100,774.50 ($16,569.60 representing the cost of cleanup to the land as a result of the pump failure, has been paid by Colony under the policy), for losses to Fieldale Farms because it "was forced to shut down the plant during the repair." Exhibit "D". Don's also received an invoice in the amount of $15,357.74 from Livingston & Haven for the amount owed to replace the damaged pumps. Exhibit "D". These damages claimed by Don's are clearly excluded from recovery by the terms of the insurance policy in place at the time of the incident.

The $92,168.52 ($94,229.05 per the itemized list attached to Exhibit "D") in damages sought by Don's Hydraulics for repairs to the power unit may not be recovered under the policy for several reasons. To begin with, approximately $42,800.00 of the amount claimed by Don's represents labor, travel, meals and lodging; amounts that are not covered under the policy. As stated above, the policy provides coverage for only the amount Don's becomes legally obligated to pay as damages due to "bodily injury" or "property damage" to which the insurance applies. *See* Section I of the policy attached hereto as Exhibit "A." Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See*

Section V(3) of the policy attached hereto as Exhibit "A." The costs incurred by Don's for labor, travel, meals and lodging are not amounts that Don's is legally obligated to pay as damages due to bodily injury or property damage, and therefore, not covered under the policy.

The remaining amount, approximately $51,429.02[2] is excluded under the "Your Product" exclusion of the policy. This amount represents the cost to replace the pumps that were damaged due to the failure of the hoses. The pumps, a component of the hydraulic power unit designed and built by Don's for the Fieldale Farms project, are "goods or products" that were "sold, handled, distributed or disposed of by" Don's and suffered physical injury and/or loss of use, and therefore, excluded from coverage under the policy.

Finally, the $84,204.90 (the original $100,774.50 claimed by Don's less the $16,569.60 paid by Colony for the clean up costs) cost to Fieldale Farms for the plant shutdown is excluded as damage to property under Section I, 2, j, (6) of the policy. This section excludes damages incurred to restore, repair or replace tangible property that is physically injured or damages incurred as a result of loss of use of tangible property due to work which was incorrectly performed by Don's. In the present case, Fieldale Farms incurred $84,204.90 in damages due to the closure of the plant while necessary repairs were made. Recovery of this amount is excluded under the "Damage to Property" exclusion of the policy.

To defeat Colony's summary judgment motion, Don's must "set forth specific facts showing there is a genuine issue for trial." *Advance Medical Optics, Inc. v. Alcon Inc.*, 361 F.

---

[2] This amount includes the $15,357.74 invoiced from Livingston & Haven that is attached to Mr. Tighe's February 12, 2004 letter.

8

Supp. 2d 404, 408 (Del. 2005)(citation omitted). Don's cannot, even with discovery; show that a genuine issue of fact exists for trial. All Don's can show is what is already established by the undisputed facts as set forth above, that being: (1) Don's contracted with Fieldale Farms to perform work on a hydraulic power unit, (2) as part of the work to be preformed at Fieldale Farms, Don's purchased twenty pump suction hoses from Truck Tech., (3) at some point during Don's work on the hydraulic power unit, the hoses failed causing damage to the pumps and the hydraulic power unit, (5) Don's incurred additional expenses in repairing the damage caused by the failed hoses, and (6) after unsuccessful attempts at recovering the damages from Truck Tech and Tipco, Don's sought recovery from Colony under the Commercial General Liability Policy in place at the time of the incident. These facts do not establish a genuine issue of material fact, but rather, clearly shows that Don's case against Colony involves the interpretation of an insurance policy, and, as such, is proper for summary judgment.

## IV.   CONCLUSION

Because this case involves the interpretation of an insurance policy and Plaintiff, Don's Hydraulics, is unable to establish a genuine issue of material fact, summary judgment is proper and Defendant, Colony Insurance Company, is entitled to judgment as a matter of law.

*ATTORNEYS FOR COLONY INSURANCE*

Anthony A. Figliola, Jr. (I.D. # 957)
FIGLIOLA & FACCIOLO
1813 Marsh Road, Suite A
Wilmington, DE 19810
(302) 475-0460

Joseph M. Toddy
ZARWIN BAUM DeVITO KAPLAN
SCHAER TODDY
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 569-2800