**ARGUMENT**

I.  **SUMMARY JUDGMENT STANDARD**

A court shall grant summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P 56 (c). The moving party bears the burden of proving that no genuine issue of material fact exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The court will view the facts in the light most favorable to the non-moving party.  Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995).  If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 254, 91 L.Ed.2d 265 (1986).  This case is substantively governed by the law of the State of Delaware. Erie v. Tompkins, 304 U.S. 64, 58 S.Ct.817 (1938).

Issues of insurance contract construction are questions of law to be addressed by the Court. Pellaton v. Bank of NY, 592 A.2d 473, 478 (Del. 1991); Hudson v. State Farm Mut. Ins. Co., 569 A.2d 1168, 1170 (Del. 1990).

It is undisputed that the replacement cost for the leaking hoses is not covered by this policy.  Don's does not seek to recover those sums. Rather, at issue is the purchase cost of new

1

pumps to replace the pumps which were destroyed as a result of the leaking hoses.  Don's also seeks indemnification for consequential damages that it suffered as a result of the failed hoses, including indemnification for labor, food, and travel expenses.  Finally, Don's seeks indemnification for those sums it has become obligated to pay Fieldale.

**A.  As a matter of law, summary judgment should be granted in favor of Don's because the "Insuring Agreement" expressly covers 1) Don's' repair and replacement costs for the destroyed pumps, including consequential damages flowing therefrom, and 2) damages suffered by Fieldale Farms due to loss of use of its plant, labor fees, and freight and oil filtering expenses.**

The "Insuring Agreement" states in relevant part:

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" to which this insurance applies

"Property damage" is defined as, in relevant part:

   a.  Physical injury to tangible property, including all resulting use of that property...; or

   b.  Loss of use of tangible property that is not physically injured. ....

**1.  The "Insuring Agreement" clearly covers Don's' repair and replacement costs for the destroyed pumps, including consequential damages flowing therefrom.**

The failure of, and resulting damage to, the pumps, due to the leaking hoses, clearly falls within the Policy's definition

2

of "property damage" as there was "physical injury to tangible property." Furthermore, the repair and replacement costs to remedy the pumps is included in the measure of damages.

Under Delaware law, "the term 'damages,' in the context of a CGL [Commercial General Liability] policy, should be interpreted broadly." <u>New Castle County v. Hartford Acc. and Indem. Co.</u>, 933 F.2d 1162, 1188 (3rd Cir. 1991). For example, in <u>Hauenstein v. St. Paul-Mercury Idem. Co.</u>, the insured sold defective plaster which was used on a house and, consequently, cracked, shrank and had to be removed so the walls and ceilings could be replastered. 65 N.W.2d 122, 125 (Minn. 1954). The court held that, although the plaster itself was excluded from coverage, an injury to the house had occurred. <u>Id.</u> As such, the measure of damages was interpreted broadly as to include "the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use." <u>Id.</u> As in <u>Hauenstein v. St. Paul-Mercury Idem. Co.</u>, Don's' repair and replacement costs for the pumps, resulting from property damage, is covered by the "Insuring Agreement."

Furthermore, all consequential damages resulting from property damage are covered because the "Insuring Agreement" specifically covers damages "because of" property damage. Thus damages covered by this policy are not merely limited to property damages. See <u>Missouri Terrazzo Co. v. Iowa National Mutual Ins.</u>

3

Co., 740 F.2d 647, 650 n. 4(8th Cir. 1984)(recognizing that whatever limits there might be when coverage is limited to damages to property, there are no such limits when coverage is stated to be "because of" property damage); Heldor Industries v. Atlantic Mutual Ins. Co., 229 N.J. Super. 390,551 A.2d 1001 (1988)(assuming that there was property damage as defined, all consequential damages covered although such damages are not themselves property damage).

Clearly, there is no dispute that the damage to the pumps, caused by leaking hoses, is property damage as defined by the Policy. Furthermore, it cannot be disputed that Don's consequential damages arose "because of" this property damage. Thus, these consequential damages, which include costs of new pumps, labor, food, travel, etc., are covered under the language of the "Insuring Agreement." Even Colony conceded there is covered property damage under the policy, having already paid over $16,000 for the contaminated hydraulic oil.

2.  **The "Insuring Agreement" clearly covers damages suffered by Fieldale Farms due to loss of use of its plant, labor fees, and freight and oil filtering expenses.**

Property damage covered under the "Insuring Agreement" includes "loss of use of tangible property that is not physically injured." Fieldale Farms' plant is "tangible property," and the plant itself was "not physically injured." Expenses incurred by

Fieldale Farms' as a result of loss of use of its plant is clearly covered by the Policy.

A claim for damages because of a physical inability to use some tangible property triggers coverage. See, <u>Snug Harbor, LTD v. Zurich, Ins.</u>, 968 F.2d 538, 544 n.4 12 (5th Cir. 1992)(court accepted proposition that there is a "loss of use of tangible property where a party has lost the use of real property, even though that property has not been physically damaged). "The amount of damages awarded for loss of use is the value of losing the benefit of that property for the time reasonably necessary to repair or replace it." <u>Coulter v. CIGNA Prop. & Cas. Cos.</u>, 934 F. Supp. 1101, 1122-23 (N.D. Iowa 1996).

It is undisputed that leaking hoses caused the hydraulic unit to fail.[1] Because of this failure, Fieldale Farms suffered $100,774.50[2] in damages due to loss of use of its plant,[3] fees for labor to assist in remedying the situation and expenses for freight and oil filtering.[4] Clearly, Fieldale Farms' expenses plant represent the "loss of use of tangible property that is not

---

[1] See SEA Hydraulic Pump/Hose Failure Analysis at P58-P68.

[2] To date, Colony has paid $16,569.16 for the contaminated hydraulic oil see P72. Fieldale demands payment from Don's of the remaining damages that resulted from the failure of the hydraulic unit.

[3] Fieldale was forced to shut down the plant in order for the hydraulic unit to be repaired so that it could power the plant see P57 Pg 119 Line 2.

[4] Fieldale also provided workers to Cathell in order to assist in remedying the resulting from the loss of use of the

physically injured see P46 Page 157 Line 3-12."

**B.   As a matter of law, summary judgment should be granted in favor of Don's because the Policy's exclusions do not preclude coverage for the claimed damages.**

   **1.   Exclusion j expressly includes coverage for the claimed damages.**

Colony argues that a number of exclusions preclude coverage. First, Colony refers to Exclusion j, entitled "Damage to Property." Colony argues that coverage is barred by relying on paragraph (6) which excludes damage to the particular part of any property "that must be restored, repaired or replaced because 'you work' was incorrectly performed on it."

Colony's argument fails at its premises as there is nothing in the record and nothing in Colony's Motion for Summary Judgment indicating that something Don's did or failed to do caused the leaking hoses. Even assuming for the moment that Don's did something "incorrectly" (which has not been seen and is a factual issue), as matter of law, this exclusion does not apply to bar coverage.

Colony, however, fails to cite the following additional language in section 5 of this exclusion:

> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

"Products-completed operations hazard" is defined in the Policy as "'property damage' occurring away from the insured's premises and which arises out of 'your product' or 'your work.'"

6

Applying this language to the case at bar, the property damage occurred away from Don's' premises. Fieldale Farms is neither owned nor rented by Don's. Furthermore, these damages arose out of Don's' product. As such, Exclusion j clearly does not exclude coverage for the damages at issue.

### 2. Exclusion k does not preclude coverage for the claimed damages because it is ambiguous.

Colony cites Exclusion k, entitled "Damage to Your Product" to preclude coverage. Exclusion k denies coverage for "'property damage' to 'your product' arising out of it or any part of it."

Under Delaware law, ambiguity is resolved in favor of the insured. <u>Chesapeake Utils. Corp. v Am. Home Assurance Co.</u>, 704 F. Supp. 551, 564 (Del. 1989) (concluding that the "general rule in Delaware [is] that an insurance contract is construed strongly against the insurer and in favor of the insured.") Furthermore, in <u>Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co.</u>, the court, in construing an insurance policy exclusion, distinguished the repair and replacement of defective parts of a product from other parts of a product not excluded from coverage. 484 F.Supp. 1375, 1383 (Del. 1980). The District Court of Delaware stated:

> Any cost of repairing or replacing those defective parts would be covered by the work product exclusion. If there were other parts of the insured's work which would be singled out as separate entities, the cost of repairing and replacing those separate parts would not be excluded.

<u>Id.</u>

Exclusion k should be construed in favor of Don's because it is ambiguous. It is unclear whether the exclusion applies only to the defective part itself or to the entire entity that Don's constructed. As such, this exclusion should apply only to the defective hoses, and not to other non-defective parts supplied by Don's. Don's does not seek reimbursement for the repair of the defective hoses. Rather, he seeks indemnification for the purchase of 20 new hydraulic pumps, totaling $51,429.02 plus interest. Under Oliver B. Cannon and Son, Inc., Don's is entitled to the $51,429.02 plus interest he expended in replacing the pumps.

### 3. Exclusion l expressly includes coverage for the claimed damages.

Colony cites Exclusion l, entitled "Damage to Your Work" to preclude coverage. Exclusion l excludes coverage for property damage to the insured's work "arising out of it or any part of" the insured's work. Colony, however, again fails to cite critical additional language of the exclusion:

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Thus, if a subcontractor's work caused the property damage, then the damage will be covered by the Policy. See also AE-Newark Associates, L.P. v. CNA, No. Civ.A. 00C-05-186JEB 2001 WL 1198930, at *3-4 (Del. Super. Oct. 2, 2001).

Exclusion l does not apply to preclude coverage of the damaged hydraulic pumps. These damages were directly caused by defective hoses manufactured and supplied by a chain of subcontractors.[5] It is undisputed that Don's subcontracted with TTI, who in turn, subcontracted with Tipco, for the manufacture of the hoses. The exclusion for Don's "work" does not apply because the defective work - the leaking hoses - was performed on behalf of Don's by a subcontractor, TTI and Tipco. As such, this exclusion does not operate to bar coverage.

## II.  Conclusion

This case involves the interpretation of an insurance policy. An interpretation of this sort is a question of law to be addressed by the Court. There are no disputed facts, thus there is no genuine issue of material fact. Therefore, summary judgment is proper and Plaintiff, Don's, is entitled to judgment as a matter of law.

WHEREFORE, for the reasons set forth above, the plaintiff, Don's Hydraulics, Inc., requests this Honorable Court grant summary judgment in its favor and against Defendant Colony Insurance.

---

[5] SEA's Hydraulic Pump/Hose Failure Analysis at P61-P71. Colony's own expert concluded that the hydraulic unit failure was due to leaks in the hydraulic hoses.

```
                              TIGHE, COTTRELL & LOGAN, P.A.

                               /s/ Michael K. Tighe
                              Michael K. Tighe (DE ID 29)
                              Abigail E. Rodgers (DE ID 4500)
                              First Federal Plaza
                              704 N. King Street, Ste. 500
                              P.O. Box 1031
                              Wilmington, DE 19899 - 1031
                              302-658-6400
                              Attorneys for the Plaintiff Don's
                              Hydraulic's, Inc.
```

Dated: June 17, 2005