**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DON'S HYDRAULICS, INC., | : | |
| Plaintiff | : | |
| | : | |
| v. | : | C.A. NO. 04-1275 (KAJ) |
| | : | |
| COLONY INSURANCE COMPANY, | : | |
| TRUCK TECH INDUSTRIES, INC., | : | |
| and TIPCO TECHNOLOGIES, INC., | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF <u>DAUBERT</u>
MOTION *IN LIMINE* OF DEFENDANT, TIPCO TECHNOLOGIES, INC.
TO PRECLUDE THOMAS BUTLER, Ph.D.
<u>FROM TESTIFYING AS TO UNFOUNDED OPINION</u>**

Defendant, Tipco Technologies, Inc. respectfully moves to preclude Thomas Butler, Ph.D. from testifying at trial as to his unfounded opinion on grounds that he has no reasonable basis or support those opinions. That opinion is not reliable and is therefore inadmissible pursuant to the criteria established in <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579 (1993). Dr. Butler's expected testimony fails to satisfy the requirements for admission of expert testimony under FRE Rules 401, 402, 403, 702 and 703.

I.   **STATEMENT OF FACTS:**

Plaintiff, Don's Hydraulics, Inc. ("Don's") proposed, designed and built a large hydraulic pumping station for Fieldale Farms. Don's contracted with Defendant Truck Tech Industries, Inc. ("TTI") to supply hoses and hose fittings; TTI subcontracted this work to moving Defendant Tipco Technologies, Inc. ("Tipco"). After testing, hoses with fittings were delivered by Tipco to TTI.

On September 12, 2003, Don's installed the hydraulic power unit and the system was operated for six hours the following day, September 14, 2003, with no signs of distress or failure. Three pumps were run for one hour and three pumps were run overnight.

On September 15, 2003 Don's started operating eight pumps. Four of the pumps failed. By Friday, September 19, 2003 Plaintiff procured twenty new hoses and retained a cleaning company to filter and cleanse the oil in the machinery. The cleaning company found "moderate amounts of metal" and "some paper" in the oil and the oil reservoir.

Don's subsequently filed suit herein against Defendants Colony Insurance Company, TTI and moving Defendant Tipco. Don's has identified its expert as Thomas W. Butler, Ph.D. Dr. Butler has been deposed as has been his associate Anthony D. Cornetto, III.

## II.     ARGUMENT:

### A.     To Permit His Testimony to be Presented at Trial, Plaintiff must Prove that Dr. Butler's Opinion is Scientifically Reliable under Daubert.

This motion respectfully requests that the Court preclude Dr. Butler from testifying at trial as to matters described herein on grounds that his opinions are not reliable as required by Daubert.

Defendants anticipate that Plaintiff may argue that a Daubert analysis or a Daubert hearing is not necessary where the scientific evidence at issues is not "novel." This argument ignores the express language of the Daubert opinion, which states at footnote 11:

> Although the Frye decision itself focused exclusively on "novel" scientific techniques, we do not read the requirements of

2

>Rule 702 to apply specially or exclusively to unconventional evidence. Of course, well-established propositions are less likely to be challenged than those that are novel, and they are more handily defended. …

The proponent of proffered expert testimony "bears the burden of establishing the relevance, reliability, and admissibility by a preponderance of the evidence." Accordingly, Dr. Butler can only testify if Plaintiff establishes admissibility under the following criteria:

1. The witness is qualified as an expert by knowledge, skill, experience, training or education (Rule 702);

2. The evidence offered is otherwise admissible, relevant and reliable (Rule 401 and 402);

3. The expert's opinion is based upon information "reasonably relied upon by experts in the field" (Rule 703);

    a. Whether a theory or technique can be (and has been) tested;

    b. Whether it "has been subjected to peer review and publication";

    c. Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and,

    d. Whether the theory or technique enjoys "general acceptance" within a "relevant scientific community";

4. The specialized knowledge being offered will assist the trier of fact to understand the evidence or determine a fact in issue (Rule 702);

5. The expert testimony will not create unfair prejudice, confuse the issues or mislead the jury (Rule 403); and,

6. The probative value of the evidence upon which the expert relies substantially outweighs the risk of prejudice (Rule 703).

Daubert, 590 U.S. at 593-94. This standard of reliability applies equally to both scientific and non-scientific expert. Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). Dr.

3

Butler's expected testimony must be "ground[ed] in the methods and procedures of science" and be "more than subjective belief or unsupported speculation". Daubert, 590 U.S. at 590.

The trial judge has a gatekeeping responsibility to determine whether the proffered expert testimony satisfies this test. Id. at 589 n.7 and 592-93. It is the trial court's gatekeeping responsibility to keep out all unreliable expert testimony, Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), and documents for which the risk of prejudice is not substantially outweighed by the probative value. Rule 703. In performing this responsibility, the trial judge should "focus on the reliability of the evidence and the bases for the opinions being offered."

A court should exercise its "gatekeeping function" and exclude testimony based upon tests when the data for such tests cannot be produced and its reliability tested. See Cook v. American S.S. Co., 53 F.3d 733, 737-38 (6th Cir. 1995). This is particularly true when there are no suitable alternative ways of proving the reliability of data upon which opinions are based. Hence, when data and conditions underlying the testing at issue are not available, no details can be given about research methodology, and no portion of an authority has been provided to consider the soundness of the party's unrevealed methodologies, an expert may not reasonably rely on those experiments for forming opinions, let alone from which to purport findings as fact. See Id. See also American & Foreign Ins. Co. v. General Elec. Co., 45 F.3d 135, 139 (6th Cir. 1995)(affirming trial court's exclusion of expert testimony that relied on testing in which there were questions regarding how tests were conducted and which could not be answered).

The central issue in the instant matter is whether Dr. Butler can proffer test employed a proper methodology in forming his opinions to ensure that their reliability can be evaluated by Defendants, the Court and the jury.

The Daubert standard applies to Dr. Butler's testimony.

Rules 702 and 703 assume that an expert's opinion will have a reliable basis in the knowledge and experience of the expert's discipline. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999). This applies to all experts not just scientific ones. Id. Even the opinion of an expert whose expertise is based entirely on experience should be based on practices that others in the field would recognize. Id. at 151. "The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

### B. Dr. Butler's Anticipated Testimony Fails to Satisfy the Criteria of Daubert.

Dr. Butler's testimony is not reliable and, therefore, is inadmissible under Daubert. Not only does he not follow any methodology relied upon by other experts in his field, his opinions do not appear to be based on any methodology at all.

Don's contention has been that the hoses leaked. The sole support for such contention is that testing was performed on three of twenty allegedly leaking hoses. This testing was done on February 24, 2004. It was done by employees of the Plaintiff in the presence of Anthony D. Cornetto, III, an employee or associate of Plaintiff's designated expert Thomas W. Butler, Ph.D.

Dr. Butler has been deposed. His report and deposition testimony reveal that he merely adopted the results of the February 24, 2004 testing and is of the opinion that "we had hoses that leaked." (Deposition of T. Butler[1] at p. 61). He was neither retained to nor did he ever determine the cause of the leakage (Id. at p. 62). Although Dr. Butler in his deposition cited a number of possible causes for failure of hydraulic pumps, he ruled out none of the other possible causes except, possibly, overheating (Id. at p. 69). The pumps themselves were never tested by him. (Id. at pp. 69-70).

Therefore, in this case there is at best merely evidence that three of twenty hoses were tested after the fact. The testing was done by Plaintiff's personnel in the presence of Dr. Butler's associate Mr. Cornetto. Mr. Cornetto acknowledged in his deposition, however, that he undertook no investigation into any of the equipment used in the testing to assure the accuracy, calibration, operation or "anything like that" involved in the February 24, 2003 procedure. (Deposition of A. Cornetto[2], p. 18). In fact, even though the system was designed as a vacuum system, positive pressure testing was done because neither Dr. Butler's organization nor the Plaintiff had available equipment to do a vacuum test. (Id. at p. 49). Mr. Cornetto acknowledged that a vacuum test would have been preferable. (Id. at pp. 49-50). Indeed, Mr. Cornetto testified that he, too, never drew any conclusion as to why the hoses leaked in the testing. (Id. at p. 46). In fact the fittings used in the testing were not the same ones used when the system failed leading to this litigation. (Id. at p. 52).

        1.    **Cross-examination may not Reveal the Weaknesses in Dr. Butler's Testimony.**

---

[1] Attached hereto as Exhibit "A".
[2] Attached hereto as Exhibit "B".

6

Plaintiff may respond that flaws or weaknesses in Dr. Butler's testimony on these issues can be revealed during cross-examination, and that the jury should determine his credibility. Aside from Delaware Supreme Court's holding in Minner that "Courts are not just to let the opinion of the credentialed expert into evidence for what it is worth and leave its evaluation to the jury", "[v]igorous cross-examination simply is not possible when neither counsel, the Court, nor the expert himself can discern a process or method by which the expert's opinion has been generated." Ward v. Shoney's, Inc., 2002 WL 1463102 at *10 (Del.Super.). The Ward Court further noted that "cross-examination of an expert whose opinion is based solely on his subjective belief is tantamount to wasted breath. Under these circumstances, the skilled expert witness is virtually untouchable on cross-examination." Id. See Lowe v. A.C. & S. Co., Inc., 1990 WL 123019 at *2 (Del.Super.) (noting that an attempt to discredit an expert usually makes little or no impression on a jury).

### III.  CONCLUSION:

Defendant respectfully requests the Court to preclude Dr. Butler from testifying or rendering an opinion about the subjects as set forth more fully above. Alternatively, Defendant requests that the Court hold a Daubert hearing to determine the admissibility of Dr. Butler's testimony.

**GOLDFEIN & JOSEPH**

BY: /s/ Gary H. Kaplan
_____
**GARY H. KAPLAN (#2965)
222 Delaware Avenue, Suite 1110
P.O. Box 2206
Wilmington, DE   19899
Attorneys for Defendant,
Tipco Technologies, Inc.**