# EXHIBIT 1

Westlaw.

Not Reported in A.2d

Page 1

Not Reported in A.2d, 1985 WL 189316 (Del.Super.)

**(Cite as: 1985 WL 189316 (Del.Super.))**

H
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Richard KEITH, Jr., et al.
v.
MELVIN L. JOSEPH CONSTRUCTION CO., et al.
**No. 81C-SE-49.**

Nov. 26, 1985.
Richard A. Zappa, Young, Conaway, Stargatt & Taylor, Wilmington.

F. Alton Tybout, Tybout, Redfearn, Casarino & Pell, Wilmington.

William J. Cattie, III, Heckler & Cattie, Wilmington.

O'HARA, Judge.

*1 The parties to this action for personal injuries have requested that several matters be ruled on before trial. The first issue to be resolved is, as was framed by the Delaware Supreme Court in *Gibson v. Keith,* Del.Supr., 492 A.2d 241 (1985), "What property owners are entitled to invoke the provisions of 7 *Del.C.* Chapter 59 in defense of tort claims asserted by strangers injured on private property in the course of recreational pursuits?"

It is plaintiff, Richard Keith, Jr.'s, position that the defenses available to landowners under 7 *Del.C.* Chapter 59, "Public Recreation on Private Lands," cannot be asserted by the defendant, landowner, G-T Ltd. Partnership ("G-T Ltd."), due to the earlier decision of this Court in *Richard Keith, Sr., et al. v. Melvin L. Joseph Construction Co.,* Del.Super., C.A. No. 81C-SE-49, O'Hara, J.,

(March 16, 1984); aff'd *Gibson v. Keith,* supra. G-T Ltd., however, disputes plaintiff's contention that it has been definitively established that Chapter 59 is inapplicable here, and quotes the conclusion of our Supreme Court in *Gibson v. Keith,* supra, where it was said, "we expressly decline to decide whether 7 *Del.C.* Chapter 59 will ultimately prove a bar to recovery and leave that question to the Superior Court to determine." 492 A.2d at 250.

As a detailed recitation of the provisions and purpose of Chapter 59 has been performed during earlier stages of this litigation, there is presently no need to exhaustively recapitulate that discussion. The Supreme Court was in accordance with this Court's holding that the purpose of the statute is to provide a grant of qualified immunity to only those landowners who directly or indirectly open private, undeveloped land and water areas for recreational use by the public. The Supreme Court, however, noted a split in caselaw in several jurisdictions which have statutes closely resembling our own, and therefore left to this Court the final decision on whether Chapter 59 will prove a bar to recovery in this case.

Further analysis and reflection has served to reenforce this Court's belief that its previous holding properly construed the terms of and the legislative purpose underlying Chapter 59. The intent of encouraging landowners to make land available for recreational uses is implicit throughout the statute, and explicitly set out in the title of the Act, 55 Del. Laws, ch. 449, and in § 5901. Furthermore, as the Supreme Court recognized, the preamble to the model Act that Chapter 59 is patterned after, reenforces the certainty that only those landowners who take affirmative steps to make their land available to the public for recreational use will gain the benefit of this statute. See, The Council of State Governments, Suggested State Legislation, Vol. XXIV, p. 150 (1965).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 2

Not Reported in A.2d, 1985 WL 189316 (Del.Super.)

**(Cite as: 1985 WL 189316 (Del.Super.))**

G-T Ltd.'s contention, based on a literal interpretation of § 5903, that Chapter 59 is designed to limit the liability of all landowners, runs contrary to the legislative purpose and other sections of the statute. The purported contradiction between the terms of § 5903 and § 5904, in that the latter mentions those landowners who "directly or indirectly invite or permit" while the former does not distinguish between landowners, is more apparent than real. As was previously stated, "if a literal reading of a statute conflicts with its express purpose or creates ambiguity in the matter, a literal construction of the statute is to be avoided." *Keith v. Joseph,* supra. In addition, the words "for recreational purposes" in § 5903 would seem to indicate that G-T Ltd.'s literal reading of this section is in error, and that § 5903 also contemplates limiting liability of landowners only as to invitees, and not trespassers. A contrary construction which places undue emphasis on the relative brevity of § 5903 makes the mistake of viewing that section in isolation from the overall purpose of the statute.

**\*2** The split in caselaw of jurisdictions with statutes nearly identical to our own does not, as the Supreme Court said, leave us "to conclude that our construction of the Delaware statute is not correct." *Gibson v. Keith,* supra.

For the reasons herein stated, it is the holding of this Court that G-T Ltd. will not be allowed to avail itself of the defenses provided in 7 *Del.C.* Chapter 59, as that statute is intended to benefit only those landowners who evidence an intent to permit the public to enter for recreational use.

Plaintiffs made a motion in limine for an order prohibiting the introduction of evidence by G-T Ltd. as to the possession and consumption of alcoholic beverages by plaintiff on the day of the accident. It is plaintiff's position that since it is undisputed that alcohol consumption was not a causative factor of the accident, inclusion of evidence pertaining to it would be not only irrelevant, but unfairly prejudicial since jurors may be predisposed to condemn underage drinking.

While G-T Ltd. does not suggest that plaintiff was intoxicated or that there is any evidence that "the consumption of beer in any way influenced the happening of the accident," it nonetheless contends that this evidence is central to its defense of contributory negligence. (P. 2, 11/19/85 Letter of G-T Ltd. to the Superior Court). G-T Ltd. submits that the consumption of alcoholic beverages by plaintiff is indicative of the carefree, "party-like atmosphere" which existed at the time of the accident.

In ruling on motions in limine, the trial Court must exercise its inherent and discretionary power to prevent prejudicial occurrences from transpiring in the presence of the jury. *People v. Jackson,* Cal.App., 95 Cal.Rptr. 919 (1971); Rothblatt & Leroy, *Motion in Limine Practice,* 20 Am.Jur. Trials 441, 455 (1973).

The proposed evidence at issue, if relevant under Rule 401 of the Delaware Rules of Evidence, must also satisfy the balancing test set out at Rule 403. Rule 403 provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury...." Unfair prejudice connotes more than mere damage to the opposing party; it also is present when the admitted evidence has the tendency to move the jury to render a decision on an improper basis. *Daset Min. Corp. v. Industrial Fuels Corp.,* Pa.Super., 473 A.2d 584 (1984).

It has been held improper for one party, after failing to allege the adverse party was intoxicated at the time of the accident, to seek the admission of evidence of alcohol consumption. A danger related to the inclusion of such prejudicial evidence is that a jury may be led to draw inculpatory inferences not from fact, but from suspicion of fact or upon an emotional basis. *Law v. Gallegher,* Del.Super., 197 A. 479 (1938); *Critzer et ux. v. Donovan et al.,* Pa.Supr., 137 A. 665 (1927).

**\*3** Assuming, without deciding, that evidence of alcohol consumption in the present case is relevant to the defense of contributory negligence because of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1985 WL 189316 (Del.Super.)

**(Cite as: 1985 WL 189316 (Del.Super.))**

Page 3

its tendency to indicate a failure to exercise ordinary prudence under the circumstances, any probative value is nonetheless outweighed by the danger of unfair prejudice. It appears from the record that plaintiff consumed no more than one can of beer, and while G-T Ltd. claims that it has no intention of suggesting that beer drinking influenced the happening of the accident, there is a significant likelihood that the admission of this evidence could have precisely that effect on the jury. The mere fact that plaintiff was drinking beer while under age, albeit in small quantities, may unfairly prejudice him and lead to a jury decision based on improper grounds.

A trial Court must balance its duty to admit all relevant and material evidence with its duty to enforce standards of fairness and the rule of the Court. *Concord Towers, Inc. v. Long,* Del.Supr., 348 A.2d 325 (1975). (For the reasons herein stated, it is the decision of this Court that any evidence of possession and consumption of alcoholic beverages by plaintiff at the time of the accident must be excluded. The probative value that evidence of plaintiff's consumption of one can of beer may have to G-T Ltd.'s establishment of the defense of contributory negligence is substantially outweighed by the danger of unfair prejudice to plaintiff.)

Plaintiff has requested that the Court issue a ruling prior to trial on the competence of its expert witness, Dr. M. Alexander Gabrielsen. Plaintiff refers the Court's attention to his deposition in this case to bolster the argument that Dr. Gabrielsen is competent to testify as to the standard of care expected of defendants, how their conduct fell below that standard, and why someone of plaintiff's age, sex, and experience would not have appreciated the risk of this type of injury.

G-T Ltd., however, maintains that Dr. Gabrielsen is not competent to testify as an expert witness concerning what precautions should be taken by a landowner and a contractor who are using undeveloped land for commercial purposes, because Dr. Gabrielsen's expertise lies in the area of recreational facilities designed for public use. G-T

Ltd. points out that if the Court rejects its arguments as to Dr. Gabrielsen's lack of competency, it "intends to develop fully, before the jury, Dr. Gabrielsen's lack of qualifications as a factor for the jury to consider in weighing his comments on the duty of care." (P. 3, 11/19/85 Letter of G-T Ltd. to the Superior Court).

An expert witness has been described as one who is possessed of special skill or knowledge, and the traditional manner in which one acquires the knowledge to qualify as an expert is through study and experience. *Loftus v. Hayden,* Del.Super., 379 A.2d 1136 (1977); 2 Jones on Evidence § 14:12. The subject of expert testimony, however, need not be beyond the ken of laymen, as long as the opinion would aid the jury in their understanding of the factual issues. *Lewis v. State,* Del.Supr., 416 A.2d 208 (1980); Rule 702 of the Delaware Rules of Evidence; *Hagler v. Gilliland,* Ala.Supr., 292 So.2d 647 (1974). An expert witness is not required to be a specialist in a particular branch within a profession; if any reasonable qualifications can be established for an expert witness, the objection to qualification will go to the weight rather than admissibility of expert testimony. *United States v. Viglia,* 549 F.2d 335 (5th Cir., 1977); cert. denied, 434 U.S. 834; *Wray v. Fairfield Amusement Co.,* Conn.Supr., 10 A.2d 600 (1940).

**\*4** Examination of the materials referred to the Court by plaintiff reveals that although Dr. Gabrielsen has no experience directly related to private, industrial sites, the many years he has spent conducting studies of swimming accidents at lakes and rivers, and his experience as a consultant to both private and government developers of recreational areas, warrants a decision that he is competent to testify as an expert witness in this case. G-T Ltd. is free to attempt to deemphasize the weight accorded Dr. Gabrielsen's testimony by demonstrating that his assessment of the standard of care required of owners and contractors on undeveloped, commercial property is incorrect, or somehow different from the standard set for developers of public recreational facilities.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                    Page 4

Not Reported in A.2d, 1985 WL 189316 (Del.Super.)

**(Cite as: 1985 WL 189316 (Del.Super.))**

A brief recitation of Dr. Gabrielsen's qualifications is in order. He obtained a doctoral degree from New York University, where he was a Professor of Education and Director of the Professional Recreation curricula for thirty years. He has published several articles on the prevention of swimming and diving accidents, has been retained by architects, the TVA, and the United States Navy in connection with the development of recreational facilities, and consequently has demonstrated in his deposition testimony considerable knowledge as to precautionary measures that should be taken by landowners and contractors to prevent this type of accident. Though Dr. Gabrielsen's opinions as to the supposed state of knowledge of contractors using "drag lines," and high school swimmers who are taught to dive a certain way, may be susceptible to attack, they nonetheless reenforce the belief that his testimony may aid the jury in understanding this case.

For the reasons herein stated, it is the decision of this Court that plaintiff's expert witness, Dr. M. Alexander Gabrielsen, is competent to testify at trial with respect to precautions which should be taken by landowners and developers of land for commercial purposes and the appreciation of the risk involved for a person of plaintiff's age, sex and experience.

G-T Ltd. submits as a matter of law that there exists no basis for the application of any exceptions to the traditional rule concerning the absence of any duty to trespassers. It is G-T Ltd.'s position that there is no support in caselaw for allowing a 17 1 2 year old to avail himself of the doctrine of attractive nuisance, contained at § 339 of the Restatement (2nd) of Torts. In addition, G-T Ltd. argues that a swimming pool does not "involve an unreasonable risk of death or serious bodily harm" to children, as that phrase is used at § 339(b).

Plaintiff, to the contrary, asserts that the question of when one can avail himself of the doctrine of attractive nuisance is one for the jury, rather than one to be decided at law.

Having examined the cases supporting the

respective positions of the parties, it is the conclusion of this Court that it cannot be held as a matter of law that the plaintiff, because he was 17 1 2 years old at the time of the accident, cannot raise the doctrine of attractive nuisance at trial. The Court is mindful that the cases cited by G-T Ltd. emphasize that attractive nuisance is seldom applied to one of plaintiff's age, but the cited cases are factually distinguishable from the case at bar. The conclusion that one of plaintiff's age at the time of the accident is not precluded in all instances from relying on § 339 is supported by the examination of caselaw at Comment (c) of that section, as well as the case cited by plaintiff.

**\*5** Additionally, the case cited by G-T Ltd., *Crouch v. Lindsey,* No. 80C-MY-54, Bifferato, J., (September 3, 1982), for the proposition that the borrow pit was not unreasonably dangerous, is factually dissimilar to the present case. That case involved a backyard swimming pool of uniform depth; not a borrow pit of varying depths.

For the reasons herein stated, it is the decision of this Court that it cannot be decided as a matter of law that there exists no basis for the application of any exceptions to the traditional rule concerning the absence of any duty to trespassers.

The next issue to be resolved is G-T Ltd.'s contention that the law of nuisance is inapplicable to the present case, as it concerns rights arising from a possessory interest in real estate. In addition, G-T Ltd. submits that contributory negligence is a bar to a nuisance per accidens.

Plaintiff responds by emphasizing that its action is based on the theory of public, not private, nuisance and therefore it is not essential that the right be derived from a possessory interest in real estate. Plaintiff refers to a Sussex County ordinance that provides, in pertinent part, that one should excavate property in such a way as "to prevent a continuing ... hazardous condition of the land." The alleged failure of G-T Ltd. to conform to the requirements of this ordinance, plaintiff argues, renders them responsible for creating a nuisance per se. *HyHon v. Shaffer's Market, Inc.,* Del.Super., 343 A.2d 627

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1985 WL 189316 (Del.Super.)

**(Cite as: 1985 WL 189316 (Del.Super.))**

(1975); Restatement (2nd) of Torts, § 821 B. Furthermore, plaintiff contends that even in the absence of such an ordinance, a nuisance per accidens existed.

It is the decision of this Court that this issue also should not be decided as a matter of law. It is not a prerequisite to all claims of nuisance that one must first establish a right arising from a possessory interest in real estate. G-T Ltd.'s justifiable objection in its November 13, 1985 letter to the Superior Court that plaintiff should not be allowed to rely on the Sussex County ordinance since opposing counsel were not provided copies of it, is no longer a valid ground of objection due to the attachment of the full text of the ordinance in plaintiff's memorandum of November 19, 1985. It does, however, remain an open question for the jury as to whether plaintiff can demonstrate the applicability of the ordinance to the present case. Finally, though it is undisputed that contributory negligence is a bar to a nuisance per accidens, it has not been decided as a matter of law that plaintiff was contributorily negligent. Therefore, the claim of nuisance per accidens, in the event plaintiff fails to show there was a nuisance per se, cannot be foreclosed at this stage of the proceedings.

For the reasons herein set forth the rulings herein enunciated shall serve as the law of the case.

IT IS SO ORDERED.

Not Reported in A.2d, 1985 WL 189316 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 1995 WL 628447 (Del.Super.)

**(Cite as: 1995 WL 628447 (Del.Super.))**

H

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware, New Castle County.
NORTH AMERICAN PHILIPS CORPORATION,
a corporation of the State of Delaware
Plaintiff,
v.
AETNA CASUALTY AND SURETY,
COMPANY, et al., Defendants.
**C.A.No. 88C-JA-155.**

Submitted April 4, 1995.
Decided April 22, 1995.

Certain Defendants' Motion in Limine to Bar Expert Testimony by Insurance Experts: DENIED.

Plaintiff's Motion in Limine to Bifurcate the Testimony of Richard Stewart: GRANTED.

Richard E. Poole, and John E. James of Potter Anderson & Corroon, Wilmington, Jerold Oshinsky , Mark H. Kolman, Robin L. Cohen, and Barry J. Fleishman Anderson, Kill, Olick & Oshinsky, Washington, D.C., for plaintiff North American Philips Corporation.

Robert J. Katzenstein of Smith, Katzenstein & Furlow, Wilmington, coordinating counsel for defendants.

MEMORANDUM OPINION

BIFFERATO, Judge.

**\*1** This is the Court's decision on two motions *in limine* which pertain to the testimony of insurance experts designated by Plaintiff North American

Philips Corporation (NAPC). Certain Defendants [FN1] (Defendants) have filed a motion *in limine* to bar the testimony of NAPC's insurance experts Richard Stewart and Michael Jackson. The motion to bar the expert testimony is DENIED. NAPC has filed a motion *in limine* to bifurcate the testimony of Richard Stewart. The motion to bifurcate is GRANTED.

I. DEFENDANTS' MOTION TO BAR EXPERT TESTIMONY
A. Introduction
NAPC has designated Richard Stewart and Michael Jackson to provide expert testimony on the domestic and London insurance markets, respectively. NAPC asserts that the testimony of these experts will organize and address important subjects relating to the policies at issue. The major topics to be addressed by the experts include (1) the nature and purpose of liability insurance; (2) the custom and practice in the insurance industry for the use and application of the standard-form comprehensive general liability insurance policies; (3) accepted meanings for terms of art peculiar to the industry such as "comprehensive general liability," "number of occurrences," "trigger of coverage," "allocation," "excess insurance," "standard form language," "primary insurance," "follow-form," "duty to defend," and "duty to indemnify"; (4) the reasons for adopting standard-form language; (5) the evolution and regulatory filings of the standard form language in comprehensive general liability policies; (6) customary underwriting and claims-handling practices in the insurance industry; and (7) the interplay of primary, umbrella and excess general liability insurance.

Defendants argue for complete exclusion of the proffered testimony for the following reasons: (1) it is extrinsic evidence; (2) it does not relate factually to the policies in issue and is therefore inadmissible; (3) it involves legal opinions; (4) it will not assist

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                Page 2

Not Reported in A.2d, 1995 WL 628447 (Del.Super.)

**(Cite as: 1995 WL 628447 (Del.Super.))**

the Court or the jury since the salient issues have already been decided by New York courts; and (5) it is unfairly prejudicial and will mislead and confuse the jury. Plaintiff counters each of these contentions and asserts that New York and Delaware law permit the use of insurance experts in complex insurance coverage cases.

This Court has ruled that New York law applies to this action. *North American Philips Corp. v. Aetna Casualty & Surety Co.,* Del. Super., C.A. No. 88C-JA-155-1-CV, Bifferato, J. (Sept. 2, 1994) (Mem.Op.). The general rule concerning admissibility of evidence is that the law of the forum prevails. Restatement (Second) Conflict of Laws § 1381 (1981).

**B. Discussion**

1. Extrinsic Evidence. Defendants argue that the testimony of both Stewart and Jackson is extrinsic and that "[b]ecause the terms of the policies issued to NAPC are unambiguous, extrinsic evidence concerning the meaning of these terms is inadmissible." This argument fails for two reasons. First, Defendants' assertion that the policies are unambiguous is insufficient grounds for contending that all extrinsic evidence is inadmissible since there has been no blanket ruling from the Court that the policies are unambiguous. Second, while it is true that extrinsic evidence may not be introduced in order to search for ambiguities, *North American Philips Corp. v. Aetna Casualty & Surety Company,* Del. Super., C.A. No. 88C-JA-155, Bifferato, J. (March 10, 1995) (Mem.Op.), it is also true that "[i]n interpreting an integrated agreement, attention is directed to the meaning of the written terms in light of the surrounding circumstances." *Klair v. Reese,* Del. Supr., 531 A.2d 219, 223 (1987) (*citing Restatement (Second) of Contracts,* § 212(1) (1981) ).

**\*2** Furthermore, the exclusion of extrinsic evidence to search for ambiguities does not necessitate a complete bar to the testimony of these experts. Rather, the scope of the experts' testimony will be guided by counsel in compliance with the Court's rulings, and Defendants will have the opportunity to object when appropriate.

2. Industry-Related Background as an Aid to the Factfinder. Defendants also argue that because the proffered expert testimony is general insurance industry background it cannot assist the factfinder and is therefore inadmissible. As the federal Supreme Court has stated, the "primary locus" of the trial court's obligation in regard to expert testimony is Rule 702 [FN2]. Delaware's counterpart to the federal rule provides in part:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, ... an expert... may testify thereto in the form of an opinion or otherwise.

D.R.E. 702 (emphasis added). *See also Hines v. Consolidated Rail Corp.,* 926 F.2d 262, 272 (3d Cir. 1991) ("expert testimony must be helpful to the fact finder by providing an adequate factual foundation").

Particularly in a complex insurance commercial insurance coverage case, the testimony of industry experts can be of great assistance in providing the necessary foundation for the jury. In *Playtex FP, Inc. v. Columbia Cas. Co.,* Del. Super., 622 A.2d 1074, 1077 n. 5 (1992), the Court, sitting as factfinder, heard extensive expert testimony about excess insurance policies. "Because of the specialized nature of the language in the insurance contracts at issue and the fact that these are not 'plain English' policies, the court considered expert testimony." *Id.* at 1076-1077. Similarly, in *Hoechst Celanese Corp. v. National Union Fire Ins. Co.,* Del. Super., C.A. No. 89C-SE-35, Gebelein, J. (April 13, 1994) (Mem.Op. & Order), the Court held that industry-related testimony would provide the Court and the jury with a factual basis of knowledge from which the contracts at issue could be intelligently construed.

Industry-related testimony, including customs and practices, is also relevant because it "enables the jury to evaluate conduct of parties against industry standards." *Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 509 (2d Cir. 1977), (*citing VII Wigmore on Evidence* § 1949, at 66 (3d ed. 1940)).

In the case at bar, the contracts are complex

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 3

Not Reported in A.2d, 1995 WL 628447 (Del.Super.)

**(Cite as: 1995 WL 628447 (Del.Super.))**

commercial insurance policies which are not written in a layperson's 'plain English' and which have evolved from a highly specialized commercial environment. Thus both the Court and the jury will benefit from expert testimony as to the contract terminology and the context from which the contracts derive. The Court concludes that the testimony of Plaintiff's insurance experts is relevant under D.R.E. 401 and that it will help the jury understand the evidence, as required by D.R.E. 702.

\*3 3. Legal Opinions. Defendants also argue for exclusion because expert witnesses are not permitted to render legal opinions. NAPC asserts that its experts will not offer legal opinions but rather will testify about comprehensive general liability insurance policies, based on their years of experience in the insurance industry.

Although Defendants discuss evidentiary rules regarding expert testimony and substantive law regarding contract interpretation without distinction, these topics must be viewed as different although overlapping areas of law. In regard to the scope of expert testimony, Delaware law governs the case, yet the law of both Delaware and New York requires "exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992). *See also Szewczyk v. Doubet*, Del. Supr., 354 A.2d 426 (1976); *Itek Corp. v. Chicago Aerial Indus., Inc.*, Del. Super., 274 A.2d 141 (1971).

Although the rule against legal opinions from experts is clear, it is also clear that an expert may testify as to subject matter which precedes a legal conclusion. In clarifying this distinction, the *Hygh* court invoked the Advisory Committee Notes to the Federal Rules of Evidence. (In Delaware, these notes "should be considered as being part of the comments prepared by the Delaware Study Committee and a court should refer to these materials in construing these rules." D.R.E. Delaware Study Committee Prefatory Note, at 1037.) The Advisory Committee Note to Fed.R.Evid. 704(a) instructs as follows:
  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides

for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. (Emphasis added.)
In other words, Rule 704 prohibits questions calling for legal opinions but allows the examiner to explore the legal criteria for forming such an opinion, as in the illustrative questions about T's capacity.

In regard to the instant motion, the proper scope of expert testimony intersects with the law of contract interpretation, which firmly prohibits expert testimony as to legal duties, standards or ramifications arising from a contract. Such testimony is reversible error and is not repaired by cross-examination. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d at 509. *See also Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990) (trial judge erred in permitting expert witness to testify as to insurer's duty under insurance policy, as such was a "legal conclusion").

\*4 The Court concludes that under the applicable evidentiary rules NAPC's experts may not "merely tell the jury what result to reach." Fed.R.Evid. 704(a) at Committee Notes. The Court further concludes that the scope of expert testimony is restricted by the principle of contract law which prohibits an expert witness to testify as to legal duties of Defendants under the contracts at issue, or make any other legal conclusions. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d at 508. However, the prohibition against legal opinion testimony does not warrant exclusion of the expert witness but rather serves as a guide to admissible testimony.

4. Testimony of the Insurance Experts Cannot

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Assist the Court Because the Court Is Bound by Prior New York Law. Defendants make this argument under Rule 702, which pertains only to the "trier of fact," although Defendants' argument discusses matters of law such as the trigger of coverage, the expected or intended clause and the pollution exclusion. Thus it is difficult to ascertain the exact meaning of this portion of Defendants' brief. The gist of the argument is that the experts' testimony will not assist either the Court or the jury because "New York courts have already ruled on the meaning and significance of the terms NAPC proposes [that] Mr. Stewart and Mr. Jackson [[will] address." In support of this contention, Defendants cite many New York cases addressing the salient issues; however, merely listing cases does not succeed in showing that all issues of the case have been settled to the extent that expert testimony is of no value whatsoever. Nor is it clear whether this argument pertains to the Court or to the jury. The Court finds that this is not a valid argument for exclusion of the experts' testimony.

5. Unfair prejudice and confusion of the jury. Defendants argue that under Rule 403 the proffered testimony is unfairly prejudicial and will mislead and confuse the jury. If expert testimony is found to be admissible under Rule 702 and Rule 703, an independent means of exclusion is provided for in Rule 403. *Hines v. Consolidated Rail Corp.*, 926 F.2d at 274. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

This rule requires the court to assess the probative value of the proffered evidence and to weigh that value against the negative consequences of admitting the evidence, including the risk of unfair prejudice and jury confusion. *Timblin v. Kent Gen. Hosp.*, Del. Supr., 640 A.2d 1021 (1990). The determination of unfair prejudice is a matter within the bounds of discretion of the trial court. *Mercedes-Benz of N. Am., Inc. v. Norman Gershman's Things to Wear, Inc.*, Del. Supr., 596 A.2d 1358 (1991). To justify exclusion under Rule 403 at the pretrial stage, the court must have before it "a record complete enough on the point at issue to be considered a virtual surrogate for a trial record." *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 859-60 (3d Cir. 1990).

*5 Defendants in this case allege that "[a] very real danger exists that the jury will rule against Certain Defendants based solely on the experts' unfounded speculations about why insurance companies defend coverage actions." Clearly, Defendants' description of the expert testimony as "unfounded speculations" cannot serve as a "virtual surrogate" for the witnesses' actual testimony, and therefore exclusion under Rule 403 is premature. *In re Paoli Railroad*, 916 F.2d at 860. Furthermore, the Court finds that the alleged danger does not substantially outweigh the probative value of enabling the jury to evaluate Defendants' conduct against industry standards. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d at 509. Having found that the experts' testimony will assist the both the Court and the jury in understanding the evidence, the court need not address Defendants' argument that the testimony will mislead and confuse the jury.

C. Conclusion

For all the foregoing reasons, the Defendants' motion *in limine* to bar the expert testimony of Richard Stewart and Michael Jackson is hereby DENIED.

IT IS SO ORDERED.

II. MOTION TO BIFURCATE TESTIMONY OF RICHARD STEWART

NAPC has moved to bifurcate the testimony of its expert Richard Stewart into the following segments: first, an overview of the insurance market with respect to comprehensive general liability policies sold to major corporations; second, information as to customs and practices in the insurance market specifically in relation to conduct and activities at the Fresno site. [FN3]

Defendants contend that NAPC's assertions as to saving time and avoiding jury confusion provide insufficient rationale for bifurcating Stewart's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                      Page 5

Not Reported in A.2d, 1995 WL 628447 (Del.Super.)

**(Cite as: 1995 WL 628447 (Del.Super.))**

testimony. The Court disagrees. In a case which involves a complex industry and highly specialized evidence, and which also promises to last for several months, the efficient presentation of evidence is a critical tactical issue for both sides. Unless there is danger of prejudice to the opposition, counsel controls the presentation of its case. When a dispute arises, this Court is to

> exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

D.R.E. 611(a). Further, "[a]buse of discretion is likely to arise only if opportunity is completely denied to present evidence, impeach witnesses, support the credibility of impeached witnesses, or refute new points raised by the opponent." *Handbook of Federal Evidence,* § 611.4, at 523-24 (West 3d ed.). The Court concludes that there is no prejudice to the Defendants since they have prior notice of the bifurcation and will have ample opportunity to cross examine Stewart as to all of his testimony. The Court is also satisfied that the two segments of Stewart's testimony will in fact enhance the presentation of the evidence and the jury's ability to apply the law to facts of the case.

**\*6** On the issue of whether counsel may consult with Stewart between the two segments of his testimony, the Court finds that this situation is analogous to a hiatus in the taking of a deposition. In amending Super.Ct.Civ.R. 30(d)(1), the Delaware Supreme Court implicitly acknowledged that attorney/witness consultations during an interim of five days or more is presumptively proper and will not cause prejudice to the opposition. Since the hiatus between the portions of Stewart's testimony may be as long as four weeks and Stewart will not be sequestered, the Court finds that consultation between counsel and Stewart will not prejudice the Defendants. Defendants have ample notice of the bifurcation and will have the opportunity to cross-examine the witness at trial.

For all the foregoing reasons, NAPC's motion *in*

*limine* to bifurcate the testimony of Richard Stewart is hereby GRANTED.

IT IS SO ORDERED.

> FN1. The defendants who have joined in this motion are Aetna Casualty and Surety Company; Allstate Insurance Company (as successor to Northbrook Excess and Surplus Insurance Company), Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies ("London Defendants"); and Prudential Reinsurance Company.

> FN2. In its Prefatory Note to the Delaware Uniform Rules of Evidence, the Delaware Study Committee stated its decision "to follow the Federal Rules of Evidence wherever possible." Delaware Uniform Rules of Evidence, Del.Rules Ann. (1995) at 1037. In all ways relevant to the motions at bar, the Delaware Uniform Rules of Evidence track the language of the Federal Rules of Evidence.

> FN3. In its brief, NAPC states that "Mr. Stewart will provide expert testimony as to how the insurance policies sold to NAPC should be interpreted to provide insurance coverage to NAPC for the claims at issue in the trial." Such testimony from an expert witness is legal opinion testimony and as such is inadmissible. *See* discussion of expert witnesses offering legal conclusions, *supra,* at 7-9.

Not Reported in A.2d, 1995 WL 628447 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

# Don's Hydraulic's Damages

| | | | | | |
|---|---|---|---|---|---|
| Fieldale Invoice | $ 100,774.50 | | | | |
| Paid (-) oil cleaning | $ (16,569.60) | | | | |
| net | $ 84,204.90 | $ 84,204.90 | | | |
| | | | | | |
| Pumps | $ 6,730.60 | | | | |
| Interest calculation | $ 4,197.50 | $ 51,429.02 | 15.97% | 9.22 | 730 day |
| Interest calculation | $ 10,928.10 | $ 10,928.10 | 13.99% | 5.75 | 730 day |
| | | | | | |
| Daily Expenses | | | | | |
| 9/17/2003 | $ 3,745.95 | | | | |
| 9/18/2003 | $ 3,785.79 | | | | |
| 9/19/2003 | $ 3,411.86 | | | | |
| 9/20/2003 | $ 6,550.86 | | | | |
| 9/21/2003 | $ 6,530.86 | | | | |
| 9/22/2003 | $ 8,082.22 | | | | |
| 9/23/2003 | $ 3,675.27 | | | | |
| 10/31/2003 | $ 7,017.22 | | | | |
| | $ 42,800.03 | $ 42,800.03 | | | |
| | | | | | |
| Cost for hoses | | $ 5,845.00 | | | |
| Cost for filters | | $ 1,152.80 | | | |
| | | | | | |
| TOTALS | | $ 196,359.85 | | | |

# EXHIBIT 4

# Invoice

Rob's Hydraulics, Inc.
P.O. Box 636
7765 Pitt Street
Grimesland, NC  27837

**Invoice Number:**
2035

**Invoice Date:**
Sep 26, 2003

**Page:**
1

Voice:    (252) 752-1500
Fax:      (252) 752-0218

**Sold To:**
Don's Hydraulics, Inc.
25029 Dupont Hwy
Unit 1
Georgetown, DE  19947

**Ship to:**

| Customer ID | | Customer PO | | Payment Terms | |
|---|---|---|---|---|---|
| DON'S | | | | Net 10 Days | |
| Sales Rep ID | | Shipping Method | | Ship Date | Due Date |
| | | Courier | | | 10/6/03 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 1.00 | | ASSIST DON'S HYDRAULICS INC AT FIELDALE FARMS IN GAINSVILLE, GA SEPT 20, 2003 3 MEN $1000.00 PER MAN PER DAY | 3,000.00 | 3,000.00 |
| 1.00 | | SEPT 21, 2003 | 3,000.00 | 3,000.00 |
| 1.00 | | SEPT 22, 2003 | 3,000.00 | 3,000.00 |
| 1,150.00 | | MILE TRAVEL | 1.10 | 1,265.00 |
| 1.00 | | MOTEL ROB, BUDDY, TERRY | 266.36 | 266.36 |

*To be paid at settlement*

Check No:

| | |
|---|---|
| Subtotal | 10,531.36 |
| Sales Tax | |
| Total Invoice Amount | 10,531.36 |
| Payment Received | 0.00 |
| **TOTAL** | 10,531.36 |

## Collins Welding, Inc.

25029 Dupont Highway – Unit 2
Georgetown DE 19947
Phone (302) 856–7181
Fax    (302) 856–1874

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/26/2003 | 1389 |

**Bill To**

Don's Hydraulics, Inc.
R.R. 7 Box 223-C
Georgetown, DE 19947

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Don | Net 30 | Hyd. Unit  Fielddale Farms  Gainesville Ga |

| Quantity | Description | | Rate | Amount |
|----------|-------------|---|------|--------|
| | Labor Sept. 17, 2003<br>Motel  Sept. 17, 2003 | (Fielddale Farms, Gainesville, Ga.) | 1,000.00<br>59.93 | 1,000.00<br>59.93 |
| | Labor Sept. 18, 2003<br>Motel  Sept. 18, 2003 | (Fielddale Farms, Gainesville, Ga.) | 1,000.00<br>59.93 | 1,000.00<br>59.93 |
| | Labor Sept. 19, 2003<br>Motel  Sept. 19, 2003 | (Fielddale Farms, Gainesville, Ga.) | 1,000.00<br>59.93 | 1,000.00<br>59.93 |
| | Labor Sept. 20, 2003<br>Motel  Sept. 20, 2003 | (Fielddale Farms, Gainesville, Ga.) | 1,000.00<br>59.93 | 1,000.00<br>59.93 |
| | Labor  Sept. 21, 2003<br>Motel Sept. 21, 2003 | (Fielddale Farms, Gainesville, Ga.) | 1,000.00<br>59.93 | 1,000.00<br>59.93 |
| | Labor Sept. 22, 2004<br>Motel Sept. 22, 2004 | (Fielddale Farms, Gainesville, Ga.) | 1,000.00<br>59.93 | 1,000.00<br>59.93 |
| | Labor Sept. 23, 2003 | (Fielddale Farms, Gainesville, Ga.) | 1,000.00 | 1,000.00 |

*To be paid at settlement*

| | Total | $7,359.58 |
|--|-------|-----------|

# EXHIBIT 5

9:39 AM

08/02/05

*#4*

# Don's Hydraulics Inc.
## Payroll Summary
### January through December 2002

| | Hours | Rate | Jan - De... | H |
|---|---|---|---|---|
| | \multicolumn{4}{c}{**Alfred L. Collins II**} | |
| **Employee Wages, Taxes and Adjustments** | | | | |
| **Gross Pay** | | | | |
| Salary | | | 0.00 | |
| Hourly | 1,580 | 12.00 | 18,960.00 | |
| Hourly Regular Rate | | | 0.00 | |
| Overtime Hourly Rate 1 | | 18.00 | 0.00 | |
| **Total Gross Pay** | | | 18,960.00 | |
| **Deductions from Gross Pay** | | | | |
| Insurance | | | 0.00 | |
| lawyer | | | 0.00 | |
| Money to pay back | | | 0.00 | |
| Uniforms | | | 0.00 | |
| **Total Deductions from Gross Pay** | | | 0.00 | |
| **Adjusted Gross Pay** | | | 18,960.00 | |
| **Taxes Withheld** | | | | |
| Federal Withholding | | | -1,880.00 | |
| Medicare Employee | | | -274.92 | |
| Social Security Employee | | | -1,175.52 | |
| DE - Withholding | | | -503.33 | |
| **Total Taxes Withheld** | | | -3,833.77 | |
| **Deductions from Net Pay** | | | | |
| Child Support | | | 0.00 | |
| **Total Deductions from Net Pay** | | | 0.00 | |
| **Net Pay** | | | 15,126.23 | |
| **Employer Taxes and Contributions** | | | | |
| Federal Unemployment | | | 56.00 | |
| Medicare Company | | | 274.92 | |
| Social Security Company | | | 1,175.52 | |
| DE - Unemployment Company | | | 357.00 | |
| **Total Employer Taxes and Contributions** | | | 1,863.44 | |

9:39 AM
08/02/05

# Don's Hydraulics Inc.
# Payroll Summary
## January through December 2002

|  | Jan - De... | Donald L. Cathell | | |
|---|---|---|---|---|
|  |  | Hours | Rate | Jan - De... |
| **Employee Wages, Taxes and Adjustments** |  |  |  |  |
| **Gross Pay** |  |  |  |  |
| Salary |  |  |  |  |
| Hourly |  |  |  | 17,500.00 |
| Hourly Regular Rate |  |  |  | 0.00 |
| Overtime Hourly Rate 1 |  |  |  | 0.00 |
| **Total Gross Pay** |  |  |  | 0.00 |
|  |  |  |  | 17,500.00 |
| **Deductions from Gross Pay** |  |  |  |  |
| Insurance |  |  |  | 0.00 |
| lawyer |  |  |  | 0.00 |
| Money to pay back |  |  |  | 0.00 |
| Uniforms |  |  |  | 0.00 |
| **Total Deductions from Gross Pay** |  |  |  | 0.00 |
| **Adjusted Gross Pay** |  |  |  | 17,500.00 |
| **Taxes Withheld** |  |  |  |  |
| Federal Withholding |  |  |  | -2,680.00 |
| Medicare Employee |  |  |  | -253.75 |
| Social Security Employee |  |  |  | -1,085.00 |
| DE - Withholding |  |  |  | -698.75 |
| **Total Taxes Withheld** |  |  |  | -4,717.50 |
| **Deductions from Net Pay** |  |  |  |  |
| Child Support |  |  |  | 0.00 |
| **Total Deductions from Net Pay** |  |  |  | 0.00 |
| **Net Pay** |  |  |  | 12,782.50 |
| **Employer Taxes and Contributions** |  |  |  |  |
| Federal Unemployment |  |  |  | 56.00 |
| Medicare Company |  |  |  | 253.75 |
| Social Security Company |  |  |  | 1,085.00 |
| DE - Unemployment Company |  |  |  | 357.00 |
| **Total Employer Taxes and Contributions** |  |  |  | 1,751.75 |

9:39 AM

08/02/05

# Don's Hydraulics Inc.
# Payroll Summary
### January through December 2003

|  | Alfred L Collins II | | |
|---|---|---|---|
|  | H... | Rate | Jan - De... |
| **Employee Wages, Taxes and Adjustments** | | | |
| **Gross Pay** | | | |
| Officer Salary Regular | | | 0.00 |
| Salary | | | 0.00 |
| Hourly | 995 | 12.00 | 11,940.00 |
| Hourly Regular Rate | | | 0.00 |
| Overtime Hourly Rate 1 | | 18.00 | 0.00 |
| **Total Gross Pay** | | | 11,940.00 |
| **Deductions from Gross Pay** | | | |
| Insurance | | | 0.00 |
| Uniforms | | | 0.00 |
| **Total Deductions from Gross Pay** | | | 0.00 |
| **Adjusted Gross Pay** | | | 11,940.00 |
| **Taxes Withheld** | | | |
| Federal Withholding | | | -1,074.00 |
| Medicare Employee | | | -173.13 |
| Social Security Employee | | | -740.28 |
| DE - Withholding | | | -277.21 |
| **Total Taxes Withheld** | | | -2,264.62 |
| **Deductions from Net Pay** | | | |
| Child Support | | | 0.00 |
| **Total Deductions from Net Pay** | | | 0.00 |
| **Net Pay** | | | 9,675.38 |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | | | 56.00 |
| Medicare Company | | | 173.13 |
| Social Security Company | | | 740.28 |
| DE - Unemployment Company | | | 357.00 |
| Company Car | | | 0.00 |
| **Total Employer Taxes and Contributions** | | | 1,326.41 |

9:39 AM

08/02/05

# Don's Hydraulics Inc.
## Payroll Summary
### January through December 2003

|  |  |  |  | Donald L. Cathell | | |  |
|---|---|---|---|---|---|---|---|
|  |  |  |  | H... | R... | Jan – De... |  |
| **Employee Wages, Taxes and Adjustments** | | | | | | | |
| **Gross Pay** | | | | | | | |
| Officer Salary Regular | | | | | | 0.00 | |
| Salary | | | | | | 14,000.00 | |
| Hourly | | | | | | 0.00 | |
| Hourly Regular Rate | | | | | | 0.00 | |
| Overtime Hourly Rate 1 | | | | | | 0.00 | |
| **Total Gross Pay** | | | | | | 14,000.00 | |
| **Deductions from Gross Pay** | | | | | | | |
| Insurance | | | | | | 0.00 | |
| Uniforms | | | | | | 0.00 | |
| **Total Deductions from Gross Pay** | | | | | | 0.00 | |
| **Adjusted Gross Pay** | | | | | | 14,000.00 | |
| **Taxes Withheld** | | | | | | | |
| Federal Withholding | | | | | | -2,070.00 | |
| Medicare Employee | | | | | | -310.10 | |
| Social Security Employee | | | | | | -975.10 | |
| DE - Withholding | | | | | | -559.00 | |
| **Total Taxes Withheld** | | | | | | -3,914.20 | |
| **Deductions from Net Pay** | | | | | | | |
| Child Support | | | | | | 0.00 | |
| **Total Deductions from Net Pay** | | | | | | 0.00 | |
| **Net Pay** | | | | | | **10,085.80** | |
| **Employer Taxes and Contributions** | | | | | | | |
| Federal Unemployment | | | | | | 56.00 | |
| Medicare Company | | | | | | 203.00 | |
| Social Security Company | | | | | | 868.00 | |
| DE - Unemployment Company | | | | | | 357.00 | |
| Company Car | | | | | | 700.00 | |
| **Total Employer Taxes and Contributions** | | | | | | 2,184.00 | |

# EXHIBIT 6

# Don's Hydraulics, Inc.
RR 7 Box 223C Georgetown DE 19947
Phone # (302)856-4545    Fax # (302)856-1874

| | | |
|---|---|---|
| Sept. 17, 2003 | $1,000.00 Per Man/Per Day | $3,000.00 |
| 3-Men (D.H.I.) | $    .85 | $    51.00 |
| 60 Miles Travel (D.H.I.) | $   59.93+70.16 | $   130.09 |
| 2 Motel-Greg Knowles | $   59.93 | $    59.93 |
| 1 Motel- Al Collins | $   59.93 | $    59.93 |
| 1-Motel- Don Cathell | | $   190.00 |
| Meals, phone, etc. | | $   255.00 |
| 300 –Miles Travel-Charlotte, N.C. | $    .85 | |
| Sept. 18, 2003 | $1,000.00 Per Man/Per Day | $3,000.00 |
| 3-Men (D.H.I.) | $    .85 | $    51.00 |
| 60 Miles Travel (D.H.I.) | | $   110.00 |
| 1-Laundry (3 men) | | $    59.93 |
| 1-Motel- Greg Knowles | $   59.93 | $    59.93 |
| 1-Motel- Al Collins | $   59.93 | $    59.93 |
| 1-Motel- Don Cathell | $   59.93 | $   190.00 |
| Meals, phone, etc. | | $   255.00 |
| 300-Miles Charlotte, NC | $    .85 | |
| Sept. 19, 2003 | $1,000.00 Per Man/Per Day | $3,000.00 |
| 3-Men (D.H.I.) | $    .85 | $    51.00 |
| 60 Miles Travel (D.H.I.) | | $    59.93 |
| 1-Motel- Al Collins | $   59.93 | $    59.93 |
| 1-Motel- Don Cathell | $   59.93 | $   196.30 |
| Meals, phone, etc. | | $    44.70 |
| Parts & Tools. | | |
| Sept. 20, 2003 | $1,000.00 Per Man/Per Day | $6,000.00 |
| 6-Men (D.H.I./R.H.I.) | $    .85 | $    51.00 |
| 60 Miles Travel (D.H.I.) | $   59.93 | $    59.93 |
| 1-Motel-Al Collins | $   59.93 | $    59.93 |
| 1-Motel-Don Cathell | | $   380.00 |
| Meals, phone, etc. | | |
| Sept 21, 2003 | $1,000.00 Per Man/Per Day | $6,000.00 |
| 6-Men (D.H.I./R.H.I.) | $    .85 | $    51.00 |
| 60 Miles Travel (D.H.I.) | $   59.93 | $    59.93 |
| 1-Motel-Al Collins | $   59.93 | $    59.93 |
| 1-Motel-Don Cathell | | $   360.00 |
| Meals, phone, etc. | | |
| Sept 22, 2003 | $   1.10 | $1,265.00 |
| 1,150 Miles, Travel (R.H.I.) | | |
| 6-Men (D.H.I./R.H.I.) | $1,000.00 Per Man/Pr Day | $6,000.00 |
| 60 Miles Travel (D.H.I.) | $    .85 | $    51.00 |
| 1-Motel- Don Cathell | $   59.93 | $    59.93 |
| 1-Motel-Al Collins | $   59.93 | $    59.93 |

| | | |
|---|---|---|
| 1-Motel Rob, Buddy, Terry | | $ 266.36 |
| Meals, phone & etc. | | $ 380.00 |

Sept 23, 2003

| | | |
|---|---|---|
| 3-Men (D.H.I.) | $1, 000.00 per Man/Per Day | $3,000.00 |
| 25-Miles Travel (D.H.I.) | .85 | $ 21.25 |
| 1-Motel-Greg Knowles | 20th & 23rd. | $ 138.16 |
| Meals, Phone, etc. | | $ 370.00 |
| 1-Motel (Don & Al) | | $ 145.86 |

20-Hydraulic Pumps                                  $51,429.02

(Pd.on Master Card @APR 15.97%   $21, 071.28 /$9.22 interest per day
(Pd.on Master Card @APR 13.99%   $15,000.00/$5.75 interest per day
(Interest Beginning 09/20/03 )

Pump inspection meeting 10/31/03  in Georgia

| | |
|---|---|
| 5-Days @ $1, 000.00 | $5,000.00 |
| 1650 Miles @.85 | $1,402.50 |
| Motel, Meals and phone | $ 614.72 |