IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DON'S HYDRAULICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1275-KAJ |
| | ) | |
| COLONY INSURANCE COMPANY and | ) | |
| TRUCK TECH TECHNOLOGIES, INC., | ) | |
| and TIPCO TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

_____

Michael K. Tighe, Esq., Abigail E. Rodgers, Esq., Tighe, Cottrell & Logan, P.A. First Federal Plaza, 704 N. King Street, Suite 500, P.O. Box 1031, Wilmington, Delaware 19899; Counsel for Plaintiff.

Anthony A. Figliola, Jr., Esq., Figliola & Facciolo, 1813 Marsh Road, Suite A, Wilmington, Delaware 19810; Counsel for Colony Insurance Co.
    Of Counsel: Joseph M. Toddy, Esq., Zarwin Baum DeVito Kaplan Schaer Toddy P.C., 1515 Market Street, Suite 1200, Philadelphia, Pennsylvania 19102.

Cynthia G. Beam, Esq., Reger Rizzo Kavulich & Darnall LLP, 1001 Jefferson Plaza, Suite 202, Wilmington, Delaware 19899; Counsel for Truck Tech Technologies, Inc.

Gary H. Kaplan, Esq., Goldfein & Joseph, 222 Delaware Avenue, Suite 1110, P.O. Box 2206, Wilmington, Delaware 19899; Counsel for Tipco Technologies, Inc.

_____

March 2, 2006
Wilmington, Delaware



**JORDAN, District Judge**

## I.    INTRODUCTION

This is a product liability case. The plaintiff, Don's Hydraulics, Inc. ("DHI"),

brought this suit against Colony Insurance Company ("Colony"), Truck Tech

Technologies, Inc. ("Truck Tech"), and Tipco Technologies, Inc. ("Tipco") (collectively,

"Defendants"), alleging property damage caused by suction hoses manufactured by

Tipco and sold to DHI by Truck Tech. Before me are the following seven motions:

Truck Tech's and Tipco's Motions in Limine to Preclude Testimony by Plaintiff's Expert

Witness (Docket Item ["D.I."] 82; D.I. 79), Defendants' Motion in Limine to Preclude

Evidence of Plaintiff's Damages (D.I. 90), and Motions for Summary Judgment brought

by DHI (D.I. 46), Colony (D.I. 44), Truck Tech (D.I. 83), and Tipco (D.I. 80). This court

has subject matter jurisdiction over this case under 28 U.S.C. § 1332. For the reasons

that follow, I will deny the motions to exclude evidence (D.I. 82; D.I. 79; D.I. 90), I will

grant in part and deny in part the motions for summary judgment brought by Colony and

Truck Tech (D.I. 44; D.I. 83), and I will deny the motions for summary judgment brought

by DHI and Tipco (D.I. 46; D.I. 80). I will also grant summary judgment for Tipco as to

the express warranty, implied warranty of fitness, and deceptive trade practices claims

against it.

## II.    BACKGROUND[1]

### A.    *The Fieldale Farms Project*

DHI designs, manufactures, and installs hydraulic power units, mainly for the

poultry and logging industry. (D.I. 86, Ex. A at 7.) On May 5, 2003, Fieldale Farms

---

[1]The following background information is taken from the parties' submissions
and does not constitute findings of fact.

("Fieldale") accepted DHI's bid to build a hydraulic power unit for Fieldale's poultry plant in Gainesville, Georgia. (Id. at 27.)

On August 7, 2003, DHI ordered twenty industrial suction hoses from Truck Tech for that project. (Id. at 46.)  DHI's owner, Don Cathell ("Cathell"), specified that the twenty hoses were to have an inside diameter of 2.5 inches with threaded male ends and JIC[2] female ends. (Id. at 46-47; D.I. 82, Ex. C, Invoice No. 4095, at 1.)  Relying on his experience with hydraulic power units, Cathell also specified that the fittings on the ends of the hoses had to be attached by a process known as crimping, rather than by the alternative processes of banding or swaging. (D.I. 86, Ex. A at 48.)  Cathell rejected a recommendation, relayed by a Truck Tech representative from the manufacturer, Tipco, that the fittings be attached by banding. (Id. at 53-54; D.I. 82, Ex. A at 82-83; D.I. 82, Ex. B at 122-25.)  To fill DHI's order, Truck Tech ordered the twenty hoses from Tipco. (D.I. 82, Ex. C.)

After a set of ten hoses were delivered to DHI by Truck Tech, DHI's employees noticed that the fittings were not tightly fixed to the hose ends. (D.I. 86, Ex. A at 55-60.) Those fittings could be turned by hand inside the hoses. (Id.)  DHI rejected that set, and Truck Tech returned the set to Tipco. (D.I. 82, Ex. B at 103-05.)

The remaining ten hoses, to fill the order for twenty, were delivered to DHI by Truck Tech, and they were also rejected because fittings were loose and turning inside the hoses. (D.I. 86, Ex. A at 61.)  The twenty rejected hoses were replaced. (Id. at 55-61.)  One of those replacement hoses was rejected again because one of the fitting

---

[2]The meaning of "JIC" is not found in the parties' submissions.

2

ends, which are also called "ferrules," was cracked. (*Id*. at 62-63.) That hose was returned to Tipco by Truck Tech and was repaired and returned to DHI. (D.I. 82, Ex. B at 52-54.) With that final replacement hose, delivery on the order for the twenty hoses was completed.

The twenty hoses were added to the assembly of the hydraulic power unit for shipment to Fieldale, and DHI noticed no further problems with the hoses during that assembly. (D.I. 86, Ex. A at 63-64.) DHI admits that it conducted no testing on the hoses or the power unit before the unit left DHI's facility. (*Id*. at 76-77.) The hydraulic power unit was shipped in two pieces by truck for final assembly and installation by DHI's employees at Fieldale's plant. (*Id*. at 79; D.I. 82, Ex. G.)

On September 12, DHI's employees finished assembling the unit at Fieldale's plant by welding the external seam on the unit's oil reservoir. (D.I. 86, Ex. A at 86-89.) On September 13, oil was pumped into the reservoir by another company. (*Id*. at 89.) After some further preliminary procedures carried out by DHI's employees, six out of the ten pump sets[3] on the unit were started on September 14. (*Id*. at 93-94, 99.) Three of those pump sets were run through that night, with no observed problems. (*Id*. at 99-100.)

However, on September 15, when additional pump sets were started so that eight of the ten were running, the system could not achieve full speed. (*Id*. at 103.) By the end of that day, two of the pump sets were not working. (*Id*. at 103-04.) Cathell examined those two pump sets and found that they had "disintegrated internally." (*Id*.

---

[3]One pump set contains two pumps. (D.I. 86, Ex. A at 93-94.)

3

at 106.) Based on his experience, Cathell described three possible causes for the damage he observed: air leaking into the system, foreign material in the system, and low oil volume. (*Id.* at 107.) Cathell decided to tape the ends of the hoses to slow potential leaks, and that appeared to help. (*Id.* at 108-10.) However, by the end of that week, all of the pumps were damaged. (*Id.* at 111-12, 117.)

DHI purchased new pumps and hoses from another supplier and brought in additional labor to repair the power unit. (*Id.* at 111-18; D.I. 45, Ex. E.) Another company filtered the oil in the unit and cleaned the reservoir, and that company reported that metal particles and some paper was removed from the oil and reservoir. (D.I. 86, Ex. A at 115.) While those repairs were going on, Fieldale had to shut down some of its equipment and has demanded payment from DHI for the loss of use of its facility. (D.I. 45, Ex. E.)

## B.   *Butler's Analysis*

An expert hired later by Colony to investigate the pump failure, Dr. Thomas Butler ("Butler"), concluded that "[t]he pump failures were the result of leaks in the hydraulic hoses," and "[w]hen tested, the hydraulic hose assemblies leaked at the interface of the female end, the hose, and the ferrule." (D.I. 81, Ex. D at 1.) To reach those conclusions, Butler relied on an inspection of the damaged pumps, an interview with Cathell, a review of letters between DHI, Truck Tech, and Tipco, and a February 24, 2004 pressure test of three of the twenty hydraulic hoses. (*Id.* at 2.) That pressure test, which was conducted at DHI's facility (*id.* at 2, 4) by DHI's employees in the presence of an associate of Butler, Anthony Cornetto (D.I. 86, Ex. A at 135-36), showed

4

that the three hoses leaked. (D.I. 81, Ex. D at 4-5, 7.) Butler obtained information from the pump manufacturer that stated that air bubbles in the system can lead to damage. (*Id.* at 7.) Based on that information, in addition to the testing, interviews, and inspection, Butler concluded that the pumps failed because of leaks in the hoses. (*Id.*)

    C.    *DHI's Insurance Policy*

    At all relevant times, DHI had a Commercial General Liability insurance policy purchased from Colony. (D.I. 45, Ex. A, Commercial General Liability Coverage Form; the "Policy.") Under the Policy, Colony agreed to "pay those sums that [DHI] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Policy at § I.A.1.a.) "Property damage" is defined as "a. Physical injury to tangible property, including all resulting use of that property ... or b. Loss of use of tangible property that is not physically injured." (*Id.* at § V.17.)

    The Policy contained several exclusions, some of which are alleged to be relevant here. First, the insurance does not apply to "'Property damage' to 'your product' arising out of it [i.e., the product] or any part of it." (*Id.* at § I.A.2.k.) "Your product" includes: "Any goods or products, other than real property, manufactured sold, handled, distributed, or disposed of by: (a) You;[4] ... ." (*Id.* at § V.21.a.1.)

    Second, the insurance does not apply to: "'Property damage' to 'your work' arising out of it [i.e., your work] or any part of it and included in the 'products-completed operations hazard'. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (*Id.* at §

---

[4]"Throughout the policy the words 'you' and 'your' refer to the Named Insured," which is, in this case, DHI. (Policy at 1.)

I.A.2.l.) "Your work" includes: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts, or equipment furnished in connection with such work or operations." (*Id.* at § V.22.a.) The "products-completed operations hazard" includes "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned ... ." (*Id.* at § V.16.a.)

Third, the insurance does not apply to "'Property damage' to ... That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it. ... [T]his exclusion does not apply to 'property damage' included in the 'products-completed operations hazard'," as defined earlier. (*Id.* at § I.A.2.j.)

DHI filed a claim with Colony pursuant to the Policy, seeking payment of $92,168.52 for its own expenses from buying new pumps and paying additional labor and travel expenses to repair the damage at Fieldale's plant, as well as $100,774.50 for the damages demanded by Fieldale for clean-up of the plant and the loss of use of the plant while the repairs were done. (D.I. 45, Ex. E.) Colony agreed to pay $16,569.60 for Fieldale's damages from oil clean-up, but claimed that the other expenses, i.e., DHI's repair expenditures and Fieldale's other costs, were not covered under the terms of the Policy. (D.I. 45, Ex. D.)

D.    *Allegations in the Complaint*

DHI filed this suit in the Delaware Superior Court, and Defendants removed the case to this court. (D.I. 1.) DHI alleges that the hoses manufactured by Tipco and sold to DHI by Truck Tech were defective, resulting in damage to the twenty pumps. (D.I. 47, P1-P5 [the "Complaint"] at ¶ 9.) First, DHI seeks payment from Colony pursuant to the Policy for the remaining expenses associated with the pump failures. (*Id*. at ¶¶ 11-18.) Second, DHI alleges that Truck Tech "negligently breached its contract with the plaintiff, that it breached its express warranty to the plaintiff that the hoses would conform to specifications, that it breached its implied warranties of merchantability and fitness for a particular purposes [sic], and that it violated 6 *Del. Code* § 2532." (*Id*. at ¶ 20.) Third, DHI alleges that Tipco "negligently manufactured and designed the hoses it sold to [Truck Tech]," as well as breached express and implied warranties and violated 6 *Del. Code* § 2532, in the same manner as alleged against Truck Tech. (*Id*. at ¶ 27.)

## III.   **STANDARD OF REVIEW**

A.    *Motions to Exclude Evidence*

Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994) (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit to exclude expert testimony is reviewed under an "abuse of discretion" standard) (internal citations omitted). "[W]hen the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed

judgment," the Court of Appeals will give those rulings "a 'hard look' to determine if a district court has abused its discretion in excluding evidence as unreliable." *Id.* at 750.

B.    *Motions for Summary Judgment*

A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). A court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When a motion for summary judgment is supported under Rule 56(c) by the moving party, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.

8

Civ. P. 56(e).  A mere scintilla of evidence in support of the non-moving party is

insufficient for a court to deny summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986).

## IV.   DISCUSSION

    A.   *Motions to Preclude Expert Testimony*

Truck Tech and Tipco seek to preclude the testimony of Butler, the expert who

investigated the pump failure for Colony and who is prepared to give expert testimony

on that failure.  Because Butler's opinion is based on reliable methodology and is not

mere speculation, I will deny Truck Tech's and Tipco's motions.

Federal Rule of Evidence 702 obligates judges to ensure that any scientific or

technical testimony admitted is relevant and reliable.  *Kumho Tire Co. v. Carmichael,*

526 U.S. 137, 147-49 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589

(1993).  Rule 702 provides that "if scientific, technical, or other specialized knowledge

will assist the trier of fact to understand the evidence or to determine a fact in issue, a

witness qualified as an expert by knowledge, skill, experience, training, or education,

may testify thereto in the form of an opinion or otherwise ... ."  The party offering the

expert testimony has the burden of proving admissibility.  *See Daubert*, 509 U.S. at 592

n.10 (citation omitted).  The subject of an expert's testimony must be grounded in the

methods and procedures of science and based on more than a subjective belief or

speculation.  *Id.* at 589-90.  Further, Rule 702 requires that expert testimony assist the

trier of fact.  In other words, it must "fit" the issues in the case by having a "valid

scientific connection to the pertinent inquiry."  *Id.* at 591-92.  The court "must examine

the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir. 1999).

In his report on the pump failure, Butler concluded that the hydraulic hoses leaked and that the leaks caused the pumps to fail. (D.I. 81, Ex. D at 1.) Truck Tech and Tipco make several arguments in their attempts to show that those conclusions are unreliable. Truck Tech concedes that Butler should be allowed to testify about the tests showing that the hoses leaked. (D.I. 81 at 12.) However, according to Truck Tech, Butler's conclusion that the pump failures were caused by leaking hoses is "speculation based upon no physical evidence and no testing" (*id.* at 10), because Butler failed to test any other part of the pumps (*id.* at 12, 14), failed to investigate the quality of the oil or the hydraulic piping at the Fieldale plant (*id.* at 11), and failed to address the metal and paper debris found in the oil and reservoir after the pump failures (*id.* at 11-12, 14-15).

Tipco goes further, arguing that Butler should be barred from testifying even about the hose testing results, because only three of twenty hoses were tested (D.I. 79 at 5), the testing was conducted months after the pump failures (*id.*), Butler was not present when the hoses were tested (*id.*), and the hoses were subjected to a pressure test rather than a vacuum test (*id.* at 6). Tipco also argues that weaknesses in Butler's testimony will not be raised adequately by cross-examination. (*Id.* at 7.)

The arguments made by Truck Tech and Tipco fail because they do not show that Butler's methods were unreliable or that his conclusions are based on speculation.

10

The pressure test at DHI's facility showed that, on February 24, 2004, three of the hoses used in the damaged power unit leaked. (D.I. 81, Ex. D at 4-5, 7.) Tipco raises concerns about the time lag before the hoses were tested, the lack of data for the other seventeen hoses, and the type of test used, but fails to present any evidence to show that those concerns make the testing unreliable according to technical standards in the industry. Indeed, witnesses have testified that pressure tests are reliable to test hoses for leaks. (D.I. 84 Ex. A at 62-64; *id.*, Ex. C at 64, 71-72.) The fact that Butler was not present when the tests were performed does not affect the reliability of his opinion, because the results were made known to him before he made his conclusions. *See* Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert ... ."). Finally, contrary to Tipco's assertions, each of its concerns may, and almost certainly will, be appropriately raised during cross-examination, since they appear to be readily understandable to a lay-person.

Truck Tech's arguments also fail. While Truck Tech is correct that Butler did not rule out debris in the oil or reservoir as a cause of the pump failures, that does not reduce Butler's opinion to "speculation based upon no physical evidence and no testing." *See Jahn v. Equine Sers., PSC*, 233 F.3d 382, 390 (6th Cir. 2000) ("In order to be admissible on the issue of causation, an expert's testimony need not eliminate all other possible causes of the injury."); *see also People Who Care v. Rockford Bd. of Educ.*, 111 F.3d 528, 537 (7th Cir. 1997) ("A statistical study is not inadmissible merely because it is unable to exclude all possible causal factors ... ."). To the contrary, Butler

11

relied on the pressure tests of the hoses, his examination of the damaged pumps, and information from the pump manufacturer concerning the effect of air in the system. Truck Tech has failed to show that that reliance was not appropriate. As for Tipco's concerns, the possibility that debris caused the pump failures is an appropriate issue to raise on cross-examination.

Therefore, because they have failed to show that Butler's testimony is based on unreliable methodology, I will deny Truck Tech's and Tipco's motions to preclude his testimony.

B.   *Negligence and Implied Warranty of Merchantability*

Truck Tech and Tipco have moved for summary judgment on the claims of negligence and breach of the implied warranty of merchantability. (D.I. 83; D.I. 80.) However, genuine issues of material fact remain that preclude summary judgment for those claims.

Under Delaware law,[5] DHI's negligence claims must be supported by proof that the hoses were defective. *See Joseph v. Jamesway Corp.*, No. Civ.A.93C-12-182-JO, 1997 WL 524126, at *3 (Del. Super. Ct. July 9, 1997) ("In order to prove a claim of negligence in the context of a products liability action alleging a manufacturing defect, the plaintiff must establish that the product was defective."); *Evans v. FMC Corp.*, No. Civ.A.898C-AU27, 1992 WL 51872, at *1 (Del. Super. Ct. Mar. 9, 1992) (requiring proof of defect to support claim of negligent design). DHI must also show that the defect was

[5]Since jurisdiction in this case is based on diversity of citizenship, I apply the substantive law of Delaware. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

12

the proximate cause of the alleged damage. *Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 284-85 (Del. 1966); *Kennedy v. Invacare Corp.*, No. Civ.A.04C-06-028, 2005 WL 2249564, at *1 (Del. Super. Ct. Sept. 15, 2005). A claim for breach of the implied warranty of merchantability also requires proof that the product was defective and that the defect caused damages. *Reybold Group, Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998).

Here, Tipco argues (D.I. 80 at 5-6) that DHI has not established a prima facie case of negligence because there is insufficient evidence that the hoses were defective. Furthermore, Truck Tech (D.I. 82 at 18) and Tipco (D.I. 80 at 7) both argue that DHI has presented no evidence that a hose defect was the proximate cause of the pump failures. The substance of those arguments simply reiterates the concerns about Butler's report and likely testimony. I have determined that Butler's expert opinion is admissible, *supra* Section IV.A, and that opinion is sufficient to raise a genuine issue of material fact both as to defects in the hoses and as to causation. Therefore, I will deny Truck Tech's and Tipco's motions for summary judgment to the extent that they relate to the claims of negligence and breach of the implied warranty of merchantability.[6]

---

[6]Truck Tech also argues that there was no implied warranty of merchantability in this case because DHI "knew of the danger posed by ordering the suction hoses to be assembled in a manner contrary to the manufacturer's recommendation." (D.I. 82 at 17.) Truck Tech cites two cases in support of the proposition that when the buyer knows of the product's dangers, there is no implied warranty of merchantability. *Scheibe v. Fort James Corp.*, 276 F. Supp. 2d 246, 252 (D. Del. 2003); *In re Asbestos Litig. (Mergenthaler)*, 542 A.2d 1205, 1214 (Del. Super. Ct. 1986). Here, there is at best a question of fact as to whether DHI knew of the danger of leaks when it specified that the hoses be crimped. Thus, Truck Tech's argument fails.

13

C.    *Remaining Claims Against Truck Tech and Tipco*

DHI also claims that Truck Tech and Tipco breached express warranties,

breached implied warranties of fitness, and violated Delaware's Deceptive Trade

Practices Act, 6 *Del. Code* § 2532 (the "Act").   Truck Tech has moved for summary

judgment as to those claims, but Tipco has not.   As discussed *infra*, Truck Tech has

demonstrated that summary judgment is appropriate, and I will therefore grant Truck

Tech's motion as to those claims.   In addition, because Truck Tech's arguments apply

with equal force to the claims against Tipco, and because DHI had sufficient notice and

adequate opportunity to respond to those arguments, I will grant summary judgment for

Tipco as to those same claims.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)

("[D]istrict courts are widely acknowledged to possess the power to enter summary

judgments sua sponte, so long as the losing party was on notice that she had to come

forward with all of her evidence."); *Rouse v. City of Aurora*, 901 F. Supp. 1533, 1539 (D.

Colo. 1995) (granting summary judgment for one defendant based on arguments made

by other defendants where the plaintiffs "had sufficient notice and adequate

opportunity" to respond); *see also* Wright, Miller & Marcus, Federal Practice and

Procedure: Civil 2d § 2720 (noting that grant of summary judgment sua sponte is proper

where losing party has "sufficient advance notice and an adequate opportunity to

demonstrate why summary judgment should not be granted").

1.    *Express Warranty*

The claim for breach of an express warranty fails because, according to Truck

Tech, there is no evidence of such a warranty (D.I. 82 at 15), and no one has adduced

14

any evidence in response to Truck Tech's motion.  Thus, I will grant summary judgment

for Truck Tech and Tipco as to that claim.

        2.   *Implied Warranty of Fitness*

> A warranty of fitness for a particular purpose arises when:  (1) a buyer has
> a special purpose for certain goods; (2) the seller knew or had reason to
> know of that purpose; (3) the seller knew or had reason to know that the
> buyer was relying on the seller's superior skill to select goods that fulfilled
> that purpose; and (4) the buyer in fact relied on the seller's superior skill.

*Dilenno v. Libby Glass Div.*, 668 F. Supp. 373, 376 (D. Del. 1987) (citing 6 *Del. Code* §

2-315).

      Here, DHI's claim fails because the evidence shows that DHI did not rely on the

seller's superior skill to select particular goods, regardless of whether that seller was

Truck Tech or Tipco.  The evidence is entirely to the contrary.  DHI ordered twenty

hoses with detailed specifications (D.I. 86, Ex. A, at 46-47; D.I. 82, Ex. C, Invoice No.

4095, at 1), and Cathell, relying on his own experience, specified that the fittings on the

ends of the hoses had to be attached by crimping (D.I. 86, Ex. A, at 48).  Cathell

rejected Tipco's recommendation, relayed by a Truck Tech representative, that the

fittings be attached by banding.  (*Id*. at 53-54; D.I. 82, Ex. A at 82-83; D.I. 82, Ex. B at

122-25.)  Because DHI did not rely on Truck Tech or Tipco, I will grant summary

judgment for those defendants as to the implied warranty of fitness claim.

        3.   *Deceptive Trade Practices*

      DHI and Colony argue (D.I. 86 at 2-3; D.I. 88) that DHI has a valid claim under

the Act, which states that it is a deceptive trade practice to cause "likelihood of

confusion or of misunderstanding as to the source, sponsorship, approval, or

certification of goods or services." 6 *Del. Code* § 2532(a)(2). According to DHI and Colony, DHI was unaware that the hoses purchased from Truck Tech were actually manufactured by Tipco. (D.I. 86 at 2-3.) In DHI and Colony's view, the confusion or misunderstanding on that point is a proper basis for a claim under the Act. (*Id.*)

However, "[t]he Act is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business... . [and it] is not intended to redress wrongs between a business and its customers." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993). Unlike the Consumer Fraud Act, 6 *Del. Code* §§ 2511-2526, which "provides remedies for violations of the 'vertical' relationship between a buyer ... and a producer or seller," the Deceptive Trade Practices Act "addresses unreasonable or unfair interference with the 'horizontal' relationships between various business interests." *Grand Ventures*, 632 A.2d at 70. Therefore, the Act does not apply to this factual situation, and I must grant summary judgment for Truck Tech and Tipco as to that claim.

D.     *Colony's Liability Under the Insurance Policy*

DHI and Colony have made cross-motions for summary judgment as to Colony's liability for DHI's costs to repair the damaged power unit and for the damages to Fieldale.[7] For DHI's repair costs, the parties are correct that there is no genuine issue of material fact, and I will grant summary judgment for Colony as to those costs.

---

[7]Colony has paid $16,569.60 under the policy for the portion of damages related to oil clean-up. (D.I. 45, Ex. D.)

However, for Fieldale's damages, genuine issues of material fact remain, and I will deny the parties' motions as to those damages.

    1.    *DHI's Costs to Repair the Power Unit*

According to an itemized list submitted by DHI to Colony, DHI spent $94,229.05 to repair the damaged power unit.[8] (D.I. 45, Ex. E.) Of that amount, $51,429.02 is the cost for purchasing new pumps, and the remainder is labor, travel, meals, and lodging for the time needed for repairs at Fieldale's plant. (*Id.*)

Colony makes two arguments that those expenses are not covered by the Policy. First, Colony argues (D.I. 45 at 7-8) that the labor, travel, meals, and lodging are not covered, because the Policy only covers costs that DHI is "legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" (Policy at § I.A.1.a). The crux of that argument appears to be that the costs are not damages. However, the costs did arise "because of" property damage, and if the insurance applies to that property damage, the associated costs appear to be covered as well. *See Vari Builders, Inc. v. U.S. Fid. & Guar. Co.*, 523 A.2d 549, 553 (Del. Super. Ct. 1987) (deciding that a "plain reading" of a similar "because of" clause included consequential damages "causally related to an item of property damage" unless excluded under the policy).

Second, Colony argues that the cost of the new pumps (D.I. 45 at 8) and the corresponding consequential costs of the repair (D.I. 57 at 2-3) are excluded because

---

[8]The letter to which that itemized list was attached claims expenses totaling $92,168.52. (D.I. 45, Ex. E.)

17

they arise from "'Property damage' to 'your [DHI's] product'." Since DHI's product is the hydraulic power unit, Colony argues that the Policy excludes coverage for costs arising from damage to the power unit.

In response to that second argument, DHI argues that the "your product" exclusion is ambiguous, and should be construed narrowly to apply only to the defective hoses, for which DHI does not claim coverage, and not to the remaining parts of the power unit. DHI finds support for that proposition in *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co.*, 484 F. Supp. 1375, 1383 (D. Del. 1980), which in turn discussed the reasoning of *Pittsburgh Bridge & Iron Works v. Liberty Mut. Ins. Co.*, 444 F.2d 1286, 1288-89 (3d Cir. 1971). In *Pittsburgh Bridge*, the Third Circuit construed an exclusion for "injury to or destruction of ... any goods, products or containers thereof manufactured, sold, handled or distributed ... by the named insured, out of which the accident arises." *Id.* at 1287. Although the Court noted that the "weight of authority" held that the exclusion should bar coverage for an entire product even if only one part of that product caused the accident, *id.* at 1288, it decided that the exclusion was ambiguous and should be narrowly construed to apply only to the defective part, *id.* at 1289. The Court also noted that the insurance industry had recognized the ambiguity and changed the standard language to clarify that the exclusion applied to the entire product. *Id.*

Here, the Policy language makes clear that the exclusion applies to damage to the product "arising out of it or any part of it." (Policy at § I.A.2.k.) Thus, the ambiguity that was the focus of the Third Circuit's concern has been remedied. Although the

18

court in *Oliver B. Cannon* discussed the Third Circuit's reasoning in its analysis of an exclusion containing the clarifying language, it did not address whether that language removed the ambiguity. 484 F. Supp. at 1382-83. It did, however, conclude that all parts of the plaintiff's product were defective, so that there was no need to decide whether the exclusion applied only to a portion of the damages. *Id.* at 1383. I conclude that the Policy language here is not ambiguous because it clearly excludes coverage for product damage even when the damage arises out of only a part of the product.

Therefore, the Policy excludes coverage for DHI's costs spent to repair the damaged power unit, including the labor, travel, meals, and lodging, and I will grant summary judgment for Colony as to those costs.[9]

### 2.    *Fieldale's Damages*

According to a summary submitted with DHI's claim to Colony, Fieldale sought $100,774.50 from DHI for damages arising from the power unit failure. (D.I. 45, Ex. E.) Colony paid $16,569.60 of that total for costs associated with oil clean-up. (D.I. 45, Ex. D.) DHI now seeks payment for the remainder.

Colony argues first that Fieldale's damages are not covered because Fieldale has not attempted to collect those expenses or filed a lawsuit. (D.I. 57 at 9.) Thus, according to Colony, DHI is not "legally obligated" to pay those expenses as required by the Policy (Policy at § I.A.1.a). By submitting a summary of its damages to DHI,

---

[9]DHI and Colony also dispute whether the exclusion for property damage to "your work" applies to DHI's damaged power unit. (D.I. 46 at 8-9; D.I. 57 at 5-6.) Because I conclude that the costs associated with that damage are excluded under the "your product" exclusion, I do not address those arguments.

Fieldale has, in fact, claimed a right to recovery. Colony cites no authority supporting the proposition that Fieldale must file suit for DHI's insurance coverage to apply, nor does it dispute that Fieldale suffered losses from the failure of the pumps. The legal obligation to Fieldale appears, under the structure of this policy, to have arisen already, as Colony itself apparently recognizes, since it has already paid for some of Fieldale's costs.

Colony also argues (D.I. 57 at 9) that Fieldale's losses are not covered because they do not arise from "property damage," which requires physical injury to or loss of use of tangible property (Policy at § V.17). However, Fieldale's damages are alleged to be associated with the clean-up and loss of use of its plant. (D.I. 45, Ex. E.) So while Colony is correct that tangible property must be affected for the Policy to apply, it has failed to show that there is no genuine issue of material fact as to whether Fieldale's damages meet that requirement.

Finally, Colony argues (D.I. 45 at 8; D.I. 57 at 7-8, 10-11) that Fieldale's damages are excluded from coverage because they arise from damage to "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it" (Policy at § I.A.2.j). DHI counters (D.I. 46 at 6-7) that that exclusion does not apply because the damage here took place away from DHI's premises and so is within the "products-completed operations hazard" (Policy at §§ I.A.2.j, V.16.a). According to Colony (D.I. 57 at 7-8) the damage is not within the products-completed operations hazard, because DHI's work had not yet been completed or abandoned (Policy at § V.16.a).

20

Summary judgment may not be granted for Fieldale's damages because the parties' arguments show that there are at least two genuine issues of material fact relevant to the coverage of those damages. There are factual issues, first, as to whether DHI's work was done incorrectly, and second, as to whether DHI's work had been completed or abandoned. Those issues are not resolved by the parties' arguments. Therefore, I will deny both motions for summary judgment as to Fieldale's damages.

E.   *Motion to Preclude Evidence of Damages*

Defendants jointly seek to preclude DHI from introducing documentary evidence of DHI's damages, arguing that the prejudicial effect of that evidence substantially outweighs its probative value. Because Defendants have failed to show unfair prejudice, I will deny their motion.

Defendants argue that DHI has failed to substantiate its claims for damages with the necessary documentation. According to Defendants, "[t]he scant evidence Plaintiff has produced in support of its claim for damages is unfairly prejudicial to Defendants, will mislead the jury and will confuse the issues at trial." (D.I. 91 at 3.) Thus, Defendants seek to preclude the introduction of that evidence pursuant to Federal Rule of Evidence 403, because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." Fed. R. Evid. 403. Defendants also request that DHI be prevented "from submitting additional documentation to supplement its discovery." (D.I. 91 at 3.)

21

Defendants break down DHI's alleged damages into four categories. For each category, Defendants argue that the absence of detailed documentary evidence makes the evidence that DHI does present unfairly prejudicial. For each category, Defendants' arguments fail. The first category is the additional labor that DHI claims was necessary to repair the damaged power unit. DHI produced a summary of those alleged expenses (*id.*, Ex. B), which Defendants argue must be precluded from evidence during trial because it is speculative and because Defendants doubt its accuracy (*id.* at 4-5). The crux of the argument is that the summary claims an expense of $1000 per day for each employee, while deposition testimony and payroll summaries raise doubts as to whether DHI's employees were actually paid that much. (*Id.*) However, raising doubts as to the accuracy of DHI's expense summary, which appears to be based on Cathell's recollection of expenses, does not suffice to show unfair prejudice that would justify excluding the evidence from trial pursuant to Rule 403. Certainly, any doubts about the summary's accuracy may be raised during Cathell's cross-examination at trial.

The second damages category is the meals, travel, and lodging expense of DHI's employees during the time needed to repair the damaged power unit. As for the labor expense, DHI produced a summary of those expenses. (*Id.*, Ex. B.) Again, Defendants contend that DHI's summary is unsubstantiated. (*Id.* at 5-6.) While no other documentation was produced to support those expenses, that does not make the summary unfairly prejudicial within the meaning of Rule 403.

The third damages category is the price paid for the replacement pumps. DHI produced an invoice for those pumps (*id.*, Ex. F), billed to Rob's Hydraulics, Inc., a

22

company owned by Cathell's son-in-law that was closer to the Fieldale plant site and within the territory of the new pump supplier (D.I. 86, Ex. A at 112-14). Cathell testified that although the invoice was billed to Rob's Hydraulic's, Inc., DHI actually paid the bill. (*Id.* at 161.) Defendants argue that, without documentary evidence showing that DHI made that payment, the invoice is unfairly prejudicial. (D.I. 91 at 6.) That argument fails; the invoice and Cathell's testimony are relevant evidence, and are not, as Defendants argue, unfairly prejudicial within the meaning of Rule 403.

The fourth damages category is the expenses to Fieldale. Defendants again allege that a summary document and eight pages of backup documentation produced by DHI (*id.*, Ex. E, No. 5) is unfairly prejudicial because there is no additional documentation. (*Id.* at 6-8.) As with the previous three categories of evidence, that argument fails, for the same reasons. Defendants also argue that the eight pages of backup documentation (*id.*, Ex. E, No. 5) must be excluded because, although they were produced before the discovery deadline in response to a discovery request, the production came after the Rule 26(a) deadline for disclosure of documentation relating to damages. *See* Fed. R. Civ. P. 26 (a). Thus, Defendants appear to argue, though not directly, that the documentation should be excluded pursuant to Rule 37(c), which states that evidence may be excluded when a party fails to make a necessary disclosure under Rule 26(a) "unless such failure is harmless." Fed. R. Civ. P. 37(c). Here, Defendants have failed to show that the production was late and, if so, that any harm has come to Defendants from the timing of the disclosure. Defendants' generalized claims of prejudice due to a lack of expert examination of the eight pages

23

of documents are not consistent with the limited number of pages and the fact that they simply support the earlier summary.[10]

Thus, Defendants have failed to show that the "scant" documentation and late production have resulted in unfair prejudice that justifies excluding DHI's evidence of damages. Defendants' motion to exclude that evidence will be denied.

## V.   CONCLUSION

Based on the foregoing reasons, I will deny Truck Tech's Motion in Limine to Preclude Testimony of Plaintiff's Expert (D.I. 82), Tipco's Motion in Limine to Preclude Plaintiff's Expert from Testifying (D.I. 79), and Defendants' Motion in Limine to Preclude Evidence of Plaintiff's Damages (D.I. 90). I will also deny Tipco's Motion for Summary Judgment (D.I. 80) and Plaintiff's Motion for Summary Judgment (D.I. 46). I will grant in part and deny in part Truck Tech's Motion for Summary Judgment (D.I. 83) and

---

[10]In their reply brief, Defendants note additional evidence that they contend is unfairly prejudicial because it was not produced in a timely fashion. As for the allegedly late production of the Fieldale documents, Defendants have failed to show unfair prejudice.

Defendants complain (D.I. 96 at 2-3) about the late production of credit card statements, made along with DHI's response to Defendants' motion (D.I. 94, Ex. 9), showing that DHI actually did make the payments for the replacement pumps. Those statements simply confirm the amounts alleged by DHI's summary and Cathell's deposition testimony. While they may have been produced late, those documents will not be excluded, in the circumstances of this case.

In addition, Defendants have failed to show prejudice from the alleged change in DHI's damage claim by $19,986,33. (D.I. 96 at 2-3 (comparing D.I. 91, Ex. A with D.I. 94, Ex. 3).) First, the portion of the alleged change from the $10,928.10 in credit card interest from the pump purchases (D.I. 96 at 2) is not a change at all, since it was reported in the earlier document as a daily expenditure (see D.I. 91, Ex. A). Second, Defendants have not shown prejudice from the apparently new claims for costs of hoses and filters, especially considering the relatively small amount of those costs ($5,845.00 and $1,152.80, respectively). (See D.I. 96 at 3 (discussing new entries on D.I. 94, Ex. 3).) Again, the evidence will not be excluded.

Colony's Motion for Summary Judgment (D.I. 44).  Finally, I will grant summary

judgment for Tipco as to the express warranty, implied warranty of fitness, and

deceptive trade practices claims.  An appropriate order will issue.