## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

**DON'S HYDRAULICS, INC.,**                    :
                                              :     **C.A. No.:  04-1275 KAJ**
            **Plaintiff,**                    :
**v.**                                        :
                                              :
**COLONY INSURANCE COMPANY,**                 :
**TRUCK TECH INDUSTRIES, INC.,**              :
**and TIPCO TECHNOLOGIES, INC.,**             :
                                              :
            **Defendants.**                   :

### PROPOSED JURY INSTRUCTIONS

Michael K. Tighe, Esquire, of Tighe, Cottrell & Logan, Wilmington,  Delaware, for the plaintiff;

Don's Hydraulics, ("Don's").


Joseph M. Toddy, Esquire, of  Zarwin, Baum, DeVito, Kaplan, Scharer & Toddy, Philadelphia,

Pennsylvania, for Defendant Colony Insurance Company, ("Colony").  Local Counsel Anthony A.

Figliola, Jr., of Figliola & Facciolo, Wilmington, Delaware.


Cynthia G. Beam, Esquire, of Reger, Rizzo, Kavulich, & Darnall, LLP, Wilmington, Delaware, for

Defendant Truck Tech Industries, Inc., ("TTI");

Gary H. Kaplan, Esquire, of Goldfein & Joseph, Wilmington, Delaware, for Defendant Tipco

Technologies, Inc., ("Tipco").


Kent R. Jordan,  J.

### INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow

in deciding this case.

Each of you has been provided with a copy of these instructions.  You may read a long as I

deliver them if you prefer, however, I would encourage you to focus your attention on me while the

1

instructions are being read. You will be able to take you copies with you into you deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rule that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the fact in any way.

Your second duty is to take the law that I give you, apply it to the fact, and decide if, by a preponderance of the evidence, the defendants are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

## PROVINCE OF THE COURT AND JURY

Now that you have heard the evidence and the arguments of counsel, it is my duty to instruct you about the law governing this case. Although you as jurors are the sole judges of the facts, you must follow the law stated in my instructions and apply the law to the facts as you find them from the evidence. You must not single out one instruction alone as stating the law, but must consider the instructions as a whole.

Nor are you to be concerned with the wisdom of any legal rule that I give you. Regardless of any opinion you may have about what the law ought to be, it would be a violation of your sworn duty to base a verdict on any view of the law other than what I give you in these instructions; It would also be a violation of your sworn duty, as judges of the facts, to base a verdict on anything but the evidence in the case.

Justice through trial by jury always depends on the willingness of each juror to do two things: first, to seek the truth about the facts from the same evidence presented to all the jurors; and, second, to arrive at a verdict by applying the same rules of law as explained by the judge.

You should consider only the evidence in the case. Evidence includes the witnesses' sworn testimony and the items admitted into evidence. You are allowed to draw reasonable conclusions from the testimony and exhibits, if you think those conclusions are justified. In other words, use your common sense to reach conclusions based on the evidence.

You have been chosen and sworn as jurors in this case to decide issues of fact. You must perform these duties without bias for or against any of the parties. The law does not allow you to be influenced by sympathy, prejudice, or public opinion. All the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law, and reach a just verdict, regardless of the consequences.

{**Comment**: *It is recommended that this charge be given at the beginning of the trial proceedings as well as at the end.*}

Source:

DEL. CONST. art. IV, ' 19 (1897); *Porter v. State*, Del. Supr., 243 A.2d 699 (1968)(judge may not comment on the facts of the case); *Gutheridge v. Pen-Mod, Inc.*, Del. Super., 239 A.2d 709

3

(1967)(jury sole judges of the facts); *Girardo v. Wilmington & Philadelphia Traction Co.*, Del. Super., 90 A. 476 (1914)(same). *See also* 3 Devitt & Blackmar, Federal Jury Practice and Instructions " 70.03, 71.01 (4th ed. 1987); Black's Law Dictionary 555 (6th ed. 1990).

## STATEMENTS OF COUNSEL

What the attorneys say is not evidence. Instead, whatever they say is intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief offered by an attorney concerning testimony or evidence.

Source:
*See DeAngelis v. Harrison*, Del. Supr., 628 A.2d 77, 88 (1993); *McNally v. Eckman*, Del. Supr., 466 A.2d 363, 371-75 (1983); *Delaware Olds, Inc. v. Dixon*, Del. Supr., 367 A.2d 178, 179 (1976). *See also* 3 Devitt & Blackmar, Federal Jury Practice and Instructions ' 70.03 (4th ed. 1987); 75A Am. Jur. 2d " 554, 566, 632.

## THE ROLE OF ATTORNEYS IN THESE PROCEEDINGS

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief offered by an attorney concerning testimony or evidence.

Notwithstanding what you have may have seen on television or at the movies, the attorneys in this trial will be expected to act professionally, argue persuasively, and conduct themselves with civility.

Source:

*See DeAngelis v. Harrison*, Del. Supr., 628 A.2d 77, 88 (1993); *McNally v. Eckman*, Del. Supr., 466 A.2d 363, 371-75 (1983); *Delaware Olds, Inc. v. Dixon*, Del. Supr., 367 A.2d 178, 179 (1976). *See also* 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 70.03 (4th ed. 1987); 75A AM. JUR. 2d " 554, 566, 632.

## NATURE OF THE CASE

In this case, the plaintiff, Don's Hydraulics, is suing for damages that resulted from the failure of a hydraulic power unit constructed by Don's for Fieldale Farms ("Fieldale"). Don's alleges that suction hoses supplied by TTI and assembled by Tipco leaked causing the destruction of the power unit. Don's alleges that Colony had a duty to pay claims related to this loss.(Colony objects to this sentence however, this sentence may be deleted if the court decides the cross-motions for summary judgment between Don's and Colony prior to trial.)

TTI and Tipco have denied that the hoses leaked or that the leaking hoses were the cause of the loss. A dispute remains as to the nature and extent of the injuries suffered by Don's and the amount of damages it is entitled to receive. Colony has denied some of Don's claims for reimbursement under the insurance contract. (Colony objects to this sentence as partial payment was made by Colony on Don's behalf under the policy at issue, however this sentence may be deleted if the court decides the cross-motions for summary judgment between Don's and Colony prior to trial.)

## NATURE OF THE CASE COLONY INSURANCE

Defendant Colony Insurance Company alleges that should the jury find Plaintiff is entitled to recovery of its alleged damages, such recovery is due to the negligence of Defendants Truck Tech Industries, Inc., and Tipco Technologies, Inc., in, assembling and

selling defective hydraulic suction hoses. As such, Defendant Colony Insurance Company has filed a cross-claim against Defendants Truck Tech Industries, Inc., and Tipco Technologies, Inc., alleging Truck Tech and Tipco are solely liable, jointly and severally liable and/or liable over to Colony Insurance Company.

## NATURE OF THE CASE

## TIPCO TECHNOLOGY, INC.'S SUBMISSION

Tipco Technologies, Inc. alleges that it extended no warranties, expressed or implied, and denies that any warranties or contract was breached. Tipco Technologies, Inc. alleges that any implied warranty of a fitness for a particular purpose was negated because Don's Hydraulics and Truck Tech Industries did not rely upon Tipco Technologies, Inc. in the selection of the subject hoses. Tipco Technologies, Inc. alleges that there was no breach of implied warranty of merchantability because Don's Hydraulics failed to prove the proximate cause of its alleged damages. Tipco Technologies, Inc. further alleges that it was Don's Hydraulics' own negligent conduct that caused the alleged losses. Lastly, Tipco Technologies, Inc. has a cross claim against Truck Tech Industries for indemnification and contribution. The basis of Tipco Technologies, Inc.'s claim against Truck Tech Industries is that Truck Tech Industries was negligent in selecting, handling and installing the hoses.

## NATURE OF THE CASE

## TRUCK TECH INDUSTRIES' SUBMISSION

Truck Tech Industries, Inc. alleges that it extended no warranties, expressed or implied, and denies that any warranties or contract was breached. Truck Tech Industries, Inc. alleges that any implied warranty of a fitness for a particular purpose was negated because Don's Hydraulics did not rely upon Truck Tech Industries, Inc. in the selection of the

subject hoses.  Truck Tech Industries, Inc. alleges that there was no breach of implied warranty of merchantability because Don's Hydraulics failed to prove the proximate cause of its alleged damages.  Truck Tech Industries, Inc. further alleges that it was Don's Hydraulics' own negligent conduct that caused the alleged losses.  Furthermore, Truck Tech Industries has a cross claim against Tipco Technologies for indemnification and contribution.

Source:

*Chesapeake & Potomac Tel. Co. v. Chesapeake Utilities Corp.*, Del. Supr., 436 A.2d 314, 338 (1981); *Greenplate v. Lowth*, Del. Supr., 199 A. 659, 662-63 (1938).  *See also* 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 70.01 (4th ed. 1987).


### CROSS-CLAIMS COLONY

In this case, a cross claim has been filed.  The cross-plaintiff is Colony Insurance Company.  The cross-defendants are Truck Tech Industries, Inc., and Tipco Technologies, Inc.  These parties stand in the same relationship to each other as a plaintiff would to a defendant.

A cross-claim is simply another set of claims that the parties to the main case have brought against each other or against someone else.  The reason you will hear and decide these claims is that they are related to the same facts and circumstances as the main case.


### TIPCO'S CROSS-CLAIMS/THIRD PARTY CLAIMS

In this case, a cross-claim has been filed. The cross-plaintiff is Tipco Technologies, Inc..  The cross-defendant is Truck Tech Industries. These parties stand in the same relationship to each other as a plaintiff would to a defendant.

A cross-claim is simply another set of claims that the parties to the main case have brought against each other or against someone else. The reason you will hear and decide these claims is that they are related to the same facts and circumstances as the main case.

Tipco Technologies, Inc. has brought a cross-claim against Truck Tech Industries, Inc. for indemnification and contribution due to Truck Tech Industries' failure to properly advise Don's Hydraulics and for Truck Tech Industries' failure in properly handling and installing the hoses.

## TRUCK TECH INDUSTRIES CROSS-CLAIMS/THIRD PARTY CLAIMS

In this case, a cross-claim has been filed. The cross-plaintiff is Truck Tech Industries, Inc.  The cross-defendant is Tipco Technologies, Inc.   These parties stand in the same relationship to each other as a plaintiff would to a defendant.

A cross-claim is simply another set of claims that the parties to the main case have brought against each other or against someone else. The reason you will hear and decide these claims is that they are related to the same facts and circumstances as the main case.

Truck Tech Industries, Inc. has brought a cross-claim against Tipco Technologies, Inc.. for indemnification and contribution due to the contract between Truck Tech Industries, Inc and Tipco Technologies, Inc., for the sale of goods.

## PLAINTIFF'S CONTENTIONS

1.    Plaintiff's contentions against defendant Colony:

    a.  Plaintiff and Colony had a mutual contract of insurance.

    b.  Plaintiff paid all necessary premiums.

    c.  Plaintiff submitted a claim for this incident.

    d.  Colony had not paid all of the claim Plaintiff submitted.

2.    Plaintiff's contentions against defendant TTI

    a.  TTI negligently breached its contract with Plaintiff.

    b.   TTI breached its express warranty to plaintiff that the hoses would conform to specification.

    c.  TTI breached its implied warranties of merchantability and fitness for a particular purpose to Plaintiff.

d.  TTI negligently breached its contract with Plaintiff in that:

I.  Failed to supply the hoses in conformity with specifications.

ii.  Provided hoses so far out of specification they were not fit for the use TTI knew they were to be used for.

iii.  Failed to inspect the hoses to make sure they met specification.

iv.  Was generally negligent.

3.  Plaintiff's contentions against defendant Tipco.

a.  Tipco negligently assembled the hoses it sold to TTI.

b.  Tipco breached its express warranty that the hoses would conform to specification.

c.  Tipco breached its implied warranties of merchantability and fitness for a particular purpose.

d.  Tipco failed to exercise reasonable care in assembling the hoses so that the hoses contained an assembly defect when they were placed into the stream of commerce.

e.  Tipco failed to exercise reasonable care in assembling the hoses so that the hoses contained an assembly defect when they were placed into the stream of commerce.

f.  Tipco was negligent in that:

I.     Negligently assembled a defective product.

ii.    Negligently assembled a defective product.

iii.   Failed to warn of the defective nature of the hoses when Tipco knew or should have known that the product involved a risk of harm.

iv.    Failed to assemble the hoses in conformity with specifications provided.

## DEFENDANT'S CONTENTIONS

1. Defendant Colony Insurance Company's Contentions

A. Colony Insurance Company contends Truck Tech Industries, Inc. was negligent by providing defective hoses to Plaintiff and failing to inspect the hoses supplied to Plaintiff

B. Colony Insurance Company contends Tipco Technologies, Inc. was negligent by manufacturing and assembling defective hoses and by failing to properly test hoses known to be defective.

## DEFENDANT, TIPCO TECHNOLOGIES, INC.'S CONTENTIONS

1. Tipco Technologies, Inc. contends that it never entered into any contract with plaintiff.

2. Tipco Technologies, Inc. contends that it did not breach any contract with Plaintiff.

3. Tipco Technologies, Inc. extended no warranties, expressed or implied, and denies that any warranties were breached.

4. Don's Hydraulics did not rely upon Tipco Technologies, Inc. in the selection of the subject hoses and, therefore, Plaintiff's claim for breach of implied warranty of fitness for a particular purpose must be dismissed.

5. There was no expressed warranty extended by Tipco Technologies, Inc. regarding the hoses, therefore, the claim for breach of express warranty for failure to conform to specification must be dismissed.

6. Don's Hydraulics has failed to prove the proximate cause of the failure of the hydraulic power unit and, thus, the claim of breach of implied warranty of merchantability must be dismissed.

7. Since Don's Hydraulics and Truck Tech Industries knew of the danger of the product as specifically ordered by the purchaser, no implied warranty of merchantability arises.

8. The economic loss doctrine bars the Plaintiff's claim since the economic loss which recovery is sought is not the proximate result of the alleged hose failure.

9.    The Plaintiff's claim and Truck Tech Industries' cross-claims are barred because of his improper handling and use of the hoses during application to the hydraulic power unit.

10.    Plaintiff's losses were caused by his own negligent conduct in applying the hoses which he believed to be defective to the hydraulic power unit, without testing.

11.    Plaintiff's losses were caused by reason completely unrelated to the hoses.

## DEFENDANT, TRUCK TECH INDUSTRIES, INC.'S CONTENTIONS

1.    Truck Tech Industries, Inc. contends that it did not breach any contract with plaintiff.

2.    Truck Tech Industries, Inc. extended no warranties, expressed or implied, and denies that any warranties were breached.

3.    Don's Hydraulics did not rely upon Truck Tech Industries, Inc. in the selection of the subject hoses and, therefore, Plaintiff's claim for breach of implied warranty of fitness for a particular purpose must be dismissed.

4.    There was no expressed warranty extended by Truck Tech Industries, Inc. regarding the hoses, therefore, the claim for breach of express warranty for failure to conform to specification must be dismissed.

5.    Don's Hydraulics has failed to prove the proximate cause of the failure of the hydraulic power unit and, thus, the claim of breach of implied warranty of merchantability must be dismissed.

6.    Since Don's Hydraulics knew of the danger of the product as specifically ordered by the purchaser, no implied warranty of merchantability arises.

7.    The economic loss doctrine bars the Plaintiff's claim since the economic loss which recovery is sought is not the proximate result of the alleged hose failure.

8.    The Plaintiff's is barred because of his improper handling and use of the hoses during application to the hydraulic power unit.

11

9.      Plaintiff's losses were caused by his own negligent conduct in applying the hoses which he believed to be defective to the hydraulic power unit, without testing.

## BURDEN OF PROOF BY A PREPONDERANCE OF THE EVIDENCE

In a civil case such as this one, the burden of proof is by a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not. Preponderance of the evidence does not depend on the number of witnesses. If the evidence on any particular point is evenly balanced, the party having the burden of proof has not proved that point by a preponderance of the evidence, and you must find against the party on that point.

In deciding whether any fact has been proved by a preponderance of the evidence, you may, unless I tell you otherwise, consider the testimony of all witnesses regardless of who called them, and all exhibits received into evidence regardless of who produced them.

In this particular case, Don's must prove all the elements of its claims of negligence breach of contract, breach of express warranty that the hoses would conform to specification, breach of implied warranties of merchantability and fitness for a particular purpose, negligent manufacturing, and negligence by a preponderance of the evidence. Those elements are as follows:

1. Claims against Colony

    a. Breach of Insurance Contract

        I.      Colony provided a policy of insurance to Don's.

        ii.     The policy of insurance was in effect at the time of loss.

        iii.    Don's incurred a loss and submitted a claim to Colony.

        iv.     Payment for claims is due and owing.

        v.      To date Colony has not paid all of Don's claims.

2. Claims against TTI

a.   Breach of contract.

    I.   Don's had a contract with TTI.  TTI was to supply Don's with suction hoses in exchange for the sale price.

    ii.   TTI supplied Don's with defective hoses which leaked.

    iii.   The defective hoses caused the power unit's failure and Don's incurred losses to repair the damage.

b.   Breach of express warranty.

    I.   Don's gave TTI specifications for the hoses.

    ii.   TTI agreed to supply hoses in conformity with those specifications.

    iii.   The hoses did not meet those specifications in that they leaked.

    iv.   The defective hoses caused the power unit's failure and Don's incurred losses to repair the damage.

c.   Breach of implied warranty of merchantability.

    I.   TTI sold the hoses to Don's.

    ii.   The hoses were not merchantable at the time of the sale because they leaked.

    iii.   There was a loss and damages to Don's.

    iv.   Those damages were caused by the leaking hoses

d.   Breach of implied warranty of fitness for a particular purpose.

    I.   The specific purpose for which the hoses were to be used for was made known to TTI.

    ii.   TTI agreed to supply hoses that fulfilled that need.

    iii.   The hoses did not fulfill that need because the hoses leaked.

    iv.   The leaking hoses caused the power unit's failure and Don's incurred losses to repair the damage.

e.   Negligence

    I.   TTI owed Don's a duty to inspect the product to make sure it was free from defects.

    ii.   TTI breached that duty by supplying Don's with defective hoses that leaked.

    iii.   The leaking hoses caused the power unit's failure.

    iv.   Don's incurred losses to repair the damage caused by the leaking hoses.

3.    Claims against Tipco

    a.    Negligent assembly of hoses sold to TTI.

        I.   TTI had a contract with Tipco to assemble, inspect, and deliver a product, here hoses.

        ii.   The hoses delivered  were defective in that they leaked, Tipco's inspection was inadequate because  it did not discover the leak, and the leaking hoses were the proximate cause of Don's damages.

        iii.   Due to the defect in the hoses, the power unit failed.

        iv.   Failure of the power unit caused Don's to incur losses to repair the damage.

    b.    Breach of express warranty that the hoses would conform to specification.

        I.   Don's gave TTI specifications for the hoses.

        ii.   TTI ordered hoses from Tipco using Don's specifications.

        iii.   Tipco agreed to assemble the hoses conforming to Don's specifications.

        iv.   The hoses did not meet those specifications because they leaked.

        v.   The leaking hoses caused the power unit to fail and caused Don's to incur losses to repair the damage.

    c.    Breach of implied warranty of merchantability.

        I.   Tipco assembled  hoses and sold the hoses to TTI who sold the hoses to Don's.

        ii.   The hoses were not merchantable at the time of the sale because they leaked.

      iii.   There was a loss and damages to Don's.

      iv.   Those damages were caused by the leaking hoses

d.   Breach of implied warranty of fitness for a particular purpose.

      I.   The specific purpose for which the hoses were to be used for was made known to Tipco, by TTI..

      ii.   Tipco agreed to assemble hoses that fulfilled that need. Tipco agreed to assemble hoses requested by TTI.

      iii.   The hoses did not fulfill that need because the hoses leaked.

      iv.   The leaking hoses caused the power unit's failure and Don's incurred losses to repair the damage.

e.   Failed to exercise reasonable care in assembling hoses so that they contained an assembly defect.

      I.   Tipco had a duty of reasonable care to assemble hoses that did not contain assembly defects.

      ii.   Tipco violated that duty by assembling hoses that contained assembling defects.

      iii.   The assembling defects caused the hoses to leak, which caused the hydraulic power unit to fail.

      iv.   Failure of the hydraulic power unit caused Don's to incur costs to repair the damaged pumps, including the replacement cost of the pumps, additional labor and lodging expenses, and downtime for the plant.

f.   Negligence.

      I.   Tipco had a duty to assemble and inspect hoses that met specifications and did not leak.

      ii.   Tipco breached this duty by assembling hoses that leaked and by failing to find the assembly defect through proper inspection.

iii.    The leaking hoses caused the failure at Fieldale Farms.

iv.    As a result of the leaking hoses, Don's incurred costs to repair the damaged pumps, including the replacement cost of the pumps, additional labor and lodging expenses, and downtime for the plant

Source:

*Reynolds v. Reynolds*, Del. Supr., 237 A.2d 708, 711 (1967)(defining preponderance of the evidence); *McCartney v. Peoples Ry. Co.*, Del. Super., 78 A. 771, 772 (1911)(same); *Oberly v. Howard Hughes Medical Inst.*, Del. Ch., 472 A.2d 366, 390 (1984)(same). *See also* 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 72.01 (4th ed. 1987).

DEL. CODE ANN. tit. 10, ' 8132 (1999) (elements of comparative negligence); *Duphily v. Delaware Elec. Coop., Inc.*, Del. Supr., 662 A.2d 821, 828 (1995)(basic elements of negligence claim); *Culver v. Bennett*, Del. Supr., 588 A.2d 1094, 1096-97 (1991)(same); *McGraw v. Corrin*, Del. Supr., 303 A.2d 641 (1973)(comparative negligence).


### EVIDENCE EQUALLY BALANCED

If the evidence tends equally to suggest two inconsistent views, neither has been established.  That is, where the evidence shows that one or two things may have caused the loss:  one for which TTI and/or Tipco were responsible and one for which they  were not.  You cannot find for Don's if it is just as likely that the loss was caused by one thing as by the other.

In other words, if you find that the evidence suggests, on the one hand, that TTI and/or Tipco were liable, but on the other hand, that they are not liable, then you must not speculate about the suggested causes of the loss; in that circumstance you must find for TTI or Tipco.

Source:

*Eskridge v.* Voshell, Del. Supr., 1991 WL 78471, **3 (1991)(1991 Del. Lexis 155, *7 (1991)); Voshell *v. Attix*, Del. Supr., No. 435, 1989, slip op. at 5, Walsh, J. (Mar. 21, 1990); *Law v. Gallegher*, Del. Supr., 197 A. 479, 488 (1938); *Gutheridge v. Pen-Mod, Inc.*, Del. Super., 239 A.2d 709, 713 (1967).  *See also Hopkins v. E.I. duPont de Nemours & Co.*, 3d Cir., 212 F.2d 623 (1954).

## NEGLIGENCE DEFINED

This case involves claims of negligence. Negligence is the lack of ordinary care; that is, the absence of the kind of care a reasonably prudent and careful person would exercise in similar circumstances. That standard is your guide. If a person's conduct in a given circumstance doesn't measure up to the conduct of an ordinarily prudent and careful person, then that person was negligent. On the other hand, if the person's conduct does measure up to the conduct of a reasonably prudent and careful person, the person wasn't negligent. The mere fact that an accident occurred isn't enough to establish negligence.

Source:

*Russell v. K-Mart*, Del. Supr., 761 A.2d 1, 5 (2000); Duphily *v. Delaware Elec. Coop., Inc.*, Del. Supr., 662 A.2d 821, 828 (1995); *Culver v. Bennett*, Del. Supr., 588 A.2d 1094, 1096-97 (1991); *Robelen Piano Co. v. Di Fonzo*, Del. Supr., 169 A.2d 240 (1961); *Rabar v. E.I. duPont de Nemours & Co.*, Del. Super., 415 A.2d 499, 506 (1980); *DeAngelis v. U.S.A.C. Transport*, Del. Super., 105 A.2d 458 (1954); *Kane v. Reed*, Del. Super., 101 A.2d 800 (1954).

## NO NEED TO PROVE ALL CHARGES OF NEGLIGENCE

Each party has alleged that the other was negligent in various ways, but a party does not have to be negligent in all these ways to be liable. You may find a party liable if that party was negligent in any one of the ways charged and if that negligence was a proximate cause of the accident.

## MULTIPLE DEFENDANTS

There are several defendants in this case. Some may be liable while others are not. All the defendants are entitled to your fair consideration of their own defenses. If you find against one defendant, that shouldn't affect your consideration of other defendants. Unless I tell you otherwise, all my instructions apply to every defendant.

Source:

*Laws v. Webb*, Del. Supr., 658 A.2d 1000, 1007 (1995); *See Travelers Ins. Co. v. Magic Chef, Inc.*,  Del. Supr., 483 A.2d 1115 (1984); *Diamond State Tel. Co. v. University of Delaware*, Del. Supr., 269 A.2d 52, 56 (1970).

## JOINT TORTFEASORS

If two or more defendants are negligent, and their negligence combines to cause the loss, you must determine their relative degrees of fault.  Using 100% as the total amount of the defendants' negligence, you must decide the percentage of each defendant's negligence as well as the contributory negligence of the plaintiff, if any.  I will give you a special-verdict form for this purpose.  Your answers in this form will enable me to apportion damages.

Source:

DEL. CODE ANN. tit. 10, " 6302, 6304, 8132 (1999); *Alexander v. Cahill*, Del. Supr., 2003 WL 1793514, *5-6 (2003) (2003 Del. Lexis 199, *17-19 (2003)); *Sears Roebuck & Co. v. Huang*, Del. Supr., 652 A.2d 568, 573 (1995); *Medical Ctr. of Delaware v. Mullins*, Del. Supr., 637 A.2d 6 (1994); *Blackshear v. Clark*, Del. Supr., 391 A.2d 747 (1978); *Farrall v. A.C. & S. Co.*, Del. Super., 586 A.2d 662 (1990).

## COMPARATIVE NEGLIGENCE - SPECIAL VERDICT FORM TIPCO

Tipco Technologies, Inc. alleges that Don's Hydraulics, Inc.'s negligence proximately caused the alleged loss. Negligence is negligence no matter who commits it. When the plaintiff is negligent, we call it contributory negligence. Under Delaware law, a plaintiff's contributory negligence doesn't mean that the plaintiff can't recover damages from the defendant as long as the plaintiff's negligence was no greater than the defendant's negligence. Instead of preventing a recovery, Delaware law reduces the plaintiff's recovery in proportion to the plaintiff's negligence.

If you find contributory negligence was a proximate cause of Plaintiff's damages, you must determine the degree of that negligence, expressed as a percentage, attributable to Don's Hydraulics, Inc.  Similarly, if you find that one or more than one defendant was negligent, you must determine their relative degrees of fault. Using 100% as the total

combined negligence of the parties, you must determine what percentage of negligence is attributable to Don's Hydraulics, Inc., Truck Tech Industries, Inc., Tipco Technologies and Colony Insurance.  I will furnish you with a special-verdict form for this purpose.  If you find that Don's Hydraulics, Inc.'s negligence is no more than half the total negligence, I will reduce the total amount of Don's Hydraulics, Inc.'s damages by the percentage of its contributory negligence.  If you find that Don's Hydraulics, Inc.'s negligence is more than half the total negligence, Don's Hydraulics, Inc. may not recover any damages.

## COMPARATIVE NEGLIGENCE - SPECIAL VERDICT
## FORM TRUCK TECH INDUSTRIES

Truck Tech Industries, Inc. alleges that Don's Hydraulics, Inc.'s negligence proximately caused the alleged loss. Negligence is negligence no matter who commits it. When the plaintiff is negligent, we call it contributory negligence. Under Delaware law, a plaintiff's contributory negligence doesn't mean that the plaintiff can't recover damages from the defendant as long as the plaintiff's negligence was no greater than the defendant's negligence. Instead of preventing a recovery, Delaware law reduces the plaintiff's recovery in proportion to the plaintiff's negligence.

If you find contributory negligence was a proximate cause of Plaintiff's damages, you must determine the degree of that negligence, expressed as a percentage, attributable to Don's Hydraulics, Inc.  Similarly, if you find that one or more than one defendant was negligent, you must determine their relative degrees of fault. Using 100% as the total combined negligence of the parties, you must determine what percentage of negligence is attributable to Don's Hydraulics, Inc., Truck Tech Industries, Inc., Tipco Technologies and Colony Insurance.  I will furnish you with a special-verdict form for this purpose.  If you find that Don's Hydraulics, Inc.'s negligence is no more than half the total

negligence, I will reduce the total amount of Don's Hydraulics, Inc.'s damages by the percentage of its contributory negligence.  If you find that Don's Hydraulics, Inc.'s negligence is more than half the total negligence, Don's Hydraulics, Inc. may not recover any damages.

## NEGLIGENT ASSEMBLY  OF A DEFECTIVE PRODUCT

An assembler  of a product such as hydraulic suction hoses owes a duty to the public and to any users of the product to exercise reasonable care, skill, and diligence in making the product.

A assembler is negligent if it fails to exercise reasonable care in making its product so that the product contains a assembly  defect when placed into the stream of commerce.  The mere fact that an accident occurs or that the product is defective does not mean that the assembler was negligent.  The test is whether Tipco used the reasonable skill, care, and diligence of an ordinarily prudent assembler  in making the product.

Source:
*Nacci v. Volkswagen of America, Inc.*, Del. Super., 325 A.2d 617, 620 (1974).  *See also Cline v. Prowler Indus. of Maryland, Inc.*, Del. Supr., 418 A.2d 968 (1980)(declining to adopt theory of strict liability per section 402A of the *Restatement* for sales of goods, due to preeminence of UCC).

## ASSEMBLER'S COMPLIANCE WITH SPECIFICATIONS

The assembler of a product built in accordance with another entity's plans and specifications is not liable for damages caused by a defect in the plans unless they are so obviously dangerous that no reasonable assembler would follow them.

Source:
*Castaldo v. Pittsburgh-Des Moines Steel Company, Inc.*, Del. Supr., 376 A.2d 88, 90 (1977). *See also* RESTATEMENT (SECOND) OF TORTS ' 399 (1965 and App.).

## NEGLIGENT ASSEMBLY OF A PRODUCT

A assembler owes a duty to use reasonable care, skill, and diligence in assembling its product so as to minimize all foreseeable risks. A assembler must reasonably anticipate the environment in which the product is normally used and must assemble the product to minimize foreseeable risks of harm that may result from using the product in such an environment.

To determine whether Tipco acted reasonably in assembling the hoses, you may consider:

1.  the purpose of the product;

2.  its usefulness and desirability;

3.  the likelihood of loss from its ordinary use;

4.  the nature and severity of likely loss;

5.  the obviousness of danger in the ordinary use of the product;

6.  the ability to eliminate the danger without making the product less useful, or creating other risks to the user;

7.  the availability of a feasible alternative assembly;

8.  the cost of any alternative assembly; and

9.  the likelihood of consumer acceptance of a product with an alternative assembly.

Although a assembler has a duty to exercise reasonable care, the assembler is not required to assemble a product that is foolproof or incapable of producing loss.

To prove that Tipco was negligent, Don's must prove by a preponderance of the evidence that Tipco failed to use reasonable care, skill, and diligence in assembling its product.

{**Comment**: *Although a factor may be listed above, it does not necessarily mean that it should be used in every charge on negligent design. Each of the factors should be considered on a case by case basis in accordance with the evidence presented at trial.*}

Source:

*Brower v. Metal Industries,* Inc., Del. Supr., 719 A.2d 941, 944 (1998); Massey-Ferguson

*v. Wells*, Del. Supr., 383 A.2d 640, 642 (1978) (adopting RESTATEMENT (SECOND) OF TORTS

" 395, 398 (1965 & App.)); *Nacci v. Volkswagen of American, Inc.,* Del. Super., 325 A.2d

617, 620 (1974).


## SELLER'S DUTY TO INSPECT

Generally, a seller is under no duty to inspect the products it sells.

To find a seller negligent, you must make two findings:

(1)  you must find that the assembler  was negligent in the assembly of the product.

(2)  you must find that TTI and/or Tipco either had actual knowledge of a assembly  defect

in the product or had reason to believe that the product was negligently assembled.

**(3)  Objection from Tipco Technologies, Inc.  Tipco objects in that it believes a third**

**element of proximate cause needs to be added.  The third element would be that**

**you must find that the negligently assembled hoses were the proximate cause of**

**the hydraulic power unit's failure.**


Source:

*Behringer v. William Gretz Brewing Co.*, Del. Super., 169 A.2d 249, 253 (1961).


## EXPRESS WARRANTY

Don's has alleged that TTI made an express warranty that its product would conform

to specification.  An express warranty is created in one of three ways:

(1)  if TTI made a promise or factual representation about the product to Don's and that

promise or representation became a basis of the parties' bargain;

(2)  if TTI described the product in a certain manner to Don's, and that description became

a basis of the parties' bargain; or

(3)   if TTI offered a sample or model of the product to Don's, and that sample or model became a basis of the parties' bargain.

No formal words are necessary to create a warranty.  Nor does TTI have to intend to make a warranty.

If you find that any one of these three circumstances existed in this case, then you must find that TTI  warranted that the product would conform to the promise, description, or model.

{**Comment**:  *This instruction may be used whether the goods are leased or sold.*}

Source:
DEL. CODE ANN. tit. 6, " 2-313, 2A-210 (1999); *Bell Sports, Inc. v. Yarusso*, Del. Supr., 759 A.2d 582, 592 (2000); *Pack & Process, Inc. v. Celotex Corp.*, Del. Super., 503 A.2d 646, 658-69 (1985); *Southern States Coop. v. Townsend Grain & Feed Co.*, D. Del., 163 Bankr. 709 (1994).

## EXPRESS WARRANTY

Don's has alleged that Tipco made an express warranty that its product would conform to specification.  An express warranty is created in one of three ways:

(1)   if Tipco made a promise or factual representation about the product to Don's and that promise or representation became a basis of the parties' bargain;

(2)   if Tipco described the product in a certain manner to Don's, and that description became a basis of the parties' bargain; or

(3)   if Tipco offered a sample or model of the product to Don's, and that sample or model became a basis of the parties' bargain.

No formal words are necessary to create a warranty.  Nor does Tipco have to intend to make a warranty.

If you find that any one of these three circumstances existed in this case, then you must find that Tipco warranted that the product would conform to the promise, description, or model.

{**Comment**: *This instruction may be used whether the goods are leased or sold.*}

Source:

DEL. CODE ANN. tit. 6, " 2-313, 2A-210 (1999); *Bell Sports, Inc. v. Yarusso*, Del. Supr., 759 A.2d 582, 592 (2000); *Pack & Process, Inc. v. Celotex Corp.*, Del. Super., 503 A.2d 646, 658-69 (1985); *Southern States Coop. v. Townsend Grain & Feed Co.*, D. Del., 163 Bankr. 709 (1994).


## CREATION OF AN EXPRESS WARRANTY - AFTER SALE

An express warranty may be created after a sale if the warranty language used after the contract negotiation is a valid modification. This means that if a written agreement says that any modifications to it must also be in writing, then modifications are valid only if they're in writing. But if the original agreement was not in writing, or if the agreement did not require that modifications be in writing, then oral modifications may suffice. No additional consideration for a modification is necessary.

Source:

DEL. CODE ANN. tit. 6, ' 2-313 cmt. 1 (1999); DEL. CODE ANN. tit. 6, ' 2-209 (1999); *Pack & Process, Inc. v. Celotex Corp.*, Del Super, 503 A.2d 646, 659 (1985).


## IMPLIED WARRANTY OF MERCHANTABILITY

In every contract for the sale of goods, there is an implied promise that the goods are merchantable. In order to be merchantable, the goods must:

1. pass without objection in the trade under the contract description; and

2. if they're fungible goods, (goods that are commercially interchangeable) be of fair average quality within their contract description; and

3. be fit for the ordinary purposes for which the goods are used; and

4.    be, within the variations permitted by the contract, of even kind, quality, and quantity within each unit and among all units involved; and

5.    be adequately contained, packaged, and labeled as the contract requires; and

6.    conform to the factual promises or affirmations, if any, made on the container or label.

If you find that any one of the above elements did not exist for the goods in this contract, then you must find that TTI and Tipco breached their implied promises that the goods would be merchantable.

{**Comment**: *The implied warranty of merchantability applies only to the sale or lease of goods. This implied warranty does not apply to service contracts or to the sale or lease of real estate. An express warranty, on the other hand, may apply to any contract and is legally binding to the full extent of its terms.*}

Source:

DEL. CODE ANN. tit. 6, ' 2-314 (1999); *Reybold Group, Inc. v. Chemprobe Technologies, Inc.*, Del. Supr. 721 A.2d 1267, 1269 (1998)(plaintiff must prove defect); *Johnson v. Hockessin Tractor, Inc.*, Del. Supr., 420 A.2d 154, 157 (1980)(holding breach of warranty is necessarily a breach of the sales contract). *See also* 6 *Del. C.* " 2A-210 to 2A-216 (implied warranties include goods offered in leases or bailments); *Neilson Bus. Equip. Ctr., Inc. v. Monteleone*, Del. Supr., 524 A.2d 1172, 1174-75 (1987).

*Southern States Coop. v. Townsend Grain & Feed Co.*, D. Del., 163 Bankr. 709 (1994); *Miley v. Harmony Mill Ltd. Partnership*, D. Del., 803 F. Supp. 965 (1992)(implied warranties do not apply to real estate lease agreements); *Grigsby v. Crown Cork & Seal Co.*, D. Del., 574 F. Supp. 128 (1983)(implied warranties do not apply to service contracts); *Cropper v. Rego Distrib. Ctr., Inc.*, D. Del., 542 F. Supp. 1142, 1153-54 (1982)(discussing the definition of "merchant in goods of that kind").

## IMPLIED WARRANTY OF MERCHANTABILITY TIPCO/TRUCK TECH INDUSTRIES

In order to show a breach of warranty of merchantability, a Plaintiff must prove:

1.    That a merchant sold the goods;

2.    The goods were defective at the time of sale;

3.    The defect caused damage to the ultimate consumer;

4.    The proximate cause of the damages was the defective nature of the goods;

5.    The seller received notice of the damages.

Authority: *Reybold v. Chemprobe*, 72 A.2d 1267 (Del. Supr.)

**IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

Don's has alleged that TTI and Tipco have breached an implied promise that the product in question was fit for a particular purpose. If you find that when the contract was formed TTI and Tipco should have known about a particular purpose for which Don's was going to use the goods and that Don's was relying on its skill or judgment to select or furnish goods suitable for that purpose, then TTI and Tipco have impliedly warranted that the goods would be suitable for that purpose.

{**Comment**: *The implied warranty of fitness for a particular purpose applies only to the sale or lease of goods. This implied warranty does not apply to service contracts or to the sale or lease of real estate. An express warranty, on the other hand, may apply to any contract and is legally binding to the full extent of its terms.*}

Source:
DEL. CODE ANN. tit. 6, ' 2-315 (1999); *Neilson Bus. Equip. Ctr., Inc. v. Monteleone*, Del. Supr., 524 A.2d 1172, 1175-76 (1987). *See also* 6 *Del. C.* " 2A-210 to 2A-216 (implied warranties include goods offered in leases or bailments); *Gulko v. General Motors Corp.*, Del. Super., C.A. No. 94C-12-285, Del Pesco, J. (Sept. 10, 1997); *Southern States Coop. v. Townsend Grain & Feed Co.*, D. Del., 163 Bankr. 709 (1994); *Miley v. Harmony Mill Ltd. Partnership*, D. Del., 803 F. Supp. 965 (1992)(implied warranties do not apply to real estate lease agreements); *Grigsby v. Crown Cork & Seal Co.*, D. Del., 574 F. Supp. 128 (1983)(implied warranties do not apply to service contracts); *ICI Americas, Inc. v. Martin-Marietta Corp.*, D. Del., 368 F. Supp. 1148 (1974).

**EXCLUSION OF IMPLIED WARRANTIES - "AS IS" TIPCO TECHNOLOGIES**

A seller such as Tipco Technologies, Inc. may generally prevent the creation of an implied warranty by making clear to the buyer that the goods are sold "as is" or "with all faults," or by other language that by common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

If the buyer, before entering into the contract or accepting or purchasing the goods, has

examined the goods fully, or has refused to examine the goods upon the seller's demand, there is no implied warranty for defects that an examination should have revealed. An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

Implied warranties are not disclaimed where circumstances indicate otherwise. If the seller's words or conduct are ambiguous or conflict with an attempted exclusion of warranties, then the attempted exclusion is not effective.

You must decide whether the implied warranty claimed by Truck Tech Industries and Don's Hydraulics, Inc. has been excluded in any manner by Tipco Technologies, Inc.

## EXCLUSION OF IMPLIED WARRANTIES - "AS IS" TRUCK TECH INDUSTRIES

A seller such as Truck Tech Industries, Inc., may generally prevent the creation of an implied warranty by making clear to the buyer that the goods are sold "as is" or "with all faults," or by other language that by common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty. If the buyer, before entering into the contract or accepting or purchasing the goods, has examined the goods fully, or has refused to examine the goods upon the seller's demand, there is no implied warranty for defects that an examination should have revealed. An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

Implied warranties are not disclaimed where circumstances indicate otherwise. If the seller's words or conduct are ambiguous or conflict with an attempted exclusion of warranties, then the attempted exclusion is not effective.

You must decide whether the implied warranty claimed by Don's Hydraulics, Inc. has been excluded in any manner by Truck Tech Industries, Inc.

27

## INSURED'S DUTY TO READ POLICY

The policy holder has a duty to read and understand the contents of an insurance policy.

Source:

See *Graham v. State Farm Mut. Auto Ins. Co.*, Del. Supr., 565 A.2d 908, 913 (1989)(general duty to read contract and a party's failure to read terms of insurance contract will not justify later disavowal of an unfavorable term); *Sharpless-Hendler Ice Cream Co. v. Davis*, Del. Ch., 155 A. 247 (1931)(contract executed by illiterate person without being misled or demanding a reading, and where other party had no knowledge of illiteracy, held valid and binding); *Alabi v. DHL Airways, Inc.*, Del. Super., 583 1358, 1362 (1990)(duty to read is a matter of general contract law); *Marine v. Slayton*, Del. Comm. Pl., 1 Del. Cas. 116, 117 (1797)(when instrument was executed by unlettered man, it was necessary that it be read and fairly explained to him).

See also *Reynolds v. Equitable Life Assur. Soc. of U.S.*, Pa. Super., 15 A.2d 464 (1940)(insured has a duty to read and understand the contents of policy); *but see In re McGinnis' Appeal*, Pa. Super., 152 A.2d 784, 786-87 (1959)(duty to read overcome by insurer's duty to re-issue previously endorsed policy without clerical errors); *accord Bandura v. Fidelity & Guar. Life Ins. Co.,* W.D. Pa., 443 F. Supp. 829, 832 (1978).

## INSURANCE CONTRACTS GENERALLY

Insurance contracts are nonnegotiable instruments and as such are contracts of adhesion. Insurance contracts should be read in accordance with the reasonable expectations of the buyer.

**Defendant Colony Insurance Company objects to this question as it is a question of law not fact.**

{**Comment**: *Please refer to appropriate section(s) in the Code for the citation necessary to an instruction if a jury question is raised.*}

Source:

See generally 18 *Del. C.* ' 2301 *et seq*. (unfair practices, especially '' 2304, 2305); 18 *Del. C.* ' 2701 *et seq*. (insurance contracts). Please refer to the Code for specific provisions and subject areas.

*Graham v. State Farm Mut. Auto Ins. Co.*, Del. Supr., 565 A.2d 908, 912 (1989)(insurance policy is generally contract of adhesion); *Hallowell v. State Farm Mut. Auto Ins. Co.*, Del. Supr., 443 A.2d 925, 926-27 (1982)(insurance contract should be read in accordance with

28

reasonable expectations of the purchaser so far as language of the policy permits if contract is one of adhesion); *cf. Playtex FP, Inc. v. Columbia Cas. Co.*, Del. Super., 609 A.2d 1087, 1092 (1991)(doctrine of reasonable expectations does not apply to interpretation of negotiated insurance contract that was not a contract of adhesion); *Goodman v. Continental Cas. Co.*, Del. Super., 347 A.2d 662, 664 (1975)(ordinary rules of contract law apply to insurance policy unless otherwise provided by statute).

## INSURANCE CONTRACTS POLICY TERMS

Parties to an insurance contract are bound to plain meaning of clear and unambiguous language of the insurance contract.

**Defendant Colony Insurance Company objects to this question as it is a question of law not fact.**

{**Comment**: *Interpretation or construction of the terms and meaning of a policy is generally a question of law for the court to decide.*}

Source:

*See* 18 *Del. C.* chs. 23, 27; *Hallowell v. State Farm Mut. Auto Ins. Co.*, Del. Supr., 443 A.2d 925, 926-27 (1982)(parties bound by plain meaning of clear and unambiguous language of insurance contract); *accord Rhone-Polenc Basic Chemicals Co. v. American Motorists Ins. Co.*, Del. Supr., 616 A.2d 1192, 1195-96 (1992). *Calloway v. Nationwide Mut. Auto Ins. Co.*, Del. Super., 248 A.2d 617, 69 (1968)(exclusions are as binding upon insured as are policy limits and exclusionary terms must be strictly construed against insurer); *Lamberton v. Travellers Indem. Co.*, Del. Super., 325 A.2d 104, 106 (1974), *aff'd*, Del. Supr., 346 A.2d 167 (1975)(strict construction of terms proper only where ambiguity is found).

## INSURANCE CONTRACT AMBIGUITIES

Any ambiguities found in an insurance contract must be construed against the drafter of the insurance contract.

**Defendant Colony Insurance Company objects to this question as it is a question of law not fact**.

{**Comment**: *Interpretation or construction of the terms and meaning of a policy is generally a question of law for the court to decide.*}

Source:

18 *Del. C.* " 2304(18)&(20), 2740; *Hallowell v. State Farm Mut. Auto Ins. Co.*, Del. Supr., 443 A.2d 925, 926-27 (1982)(court will not twist words of clear and unambiguous language in order to construe insurance contract, but ambiguous contract terms must be construed most strongly against insurer as drafter of the policy); *Cheseroni v. Nationwide Mut. Ins. Co.*, Del. Super., 402 A.2d 1215, 1217 (1979), *aff'd*, Del. Supr., 410 A.2d 1015 (1980)(ambiguity exists only where two or more reasonable interpretations are possible); *Lamberton v. Travellers Indem. Co.*, Del. Super., 325 A.2d 104, 106 (1974), *aff'd*, Del. Supr., 346 A.2d 167 (1975)(strict construction of terms proper only where ambiguity is found).

## CONTRACT FORMATION

A contract is a legally binding agreement between two or more parties.  Each party to the contract must perform according to the agreement's terms.  A party's failure to perform a contractual duty constitutes breach of contract.  If a party breaches the contract and that breach causes damages or loss to another party, then the injured party may claim damages.

For a legally binding contract to exist, there must be:

1)    an offer of a contract by one party;

2)    an acceptance of that offer by the other party;

3)    consideration for the offer and acceptance; and

4)    sufficiently specific terms that determine the obligations of each party.

In this case, Don's alleges that TTI breached a contract by providing defective suction hoses.  You must determine from a preponderance of the evidence whether a legally binding contract was formed between Don's and TTI.

Source:

Generally: *Leeds v. First Allied Connecticut Corp.*, Del. Ch., 521 A.2d 1095, 1101-02 (1986); *Norse Petroleum A/S v. LVO International, Inc.*, Del. Super., 389 A.2d 771, 773 (1978).

Offer and Acceptance: *Industrial America, Inc. v. Fulton Indus., Inc.*, Del. Supr., 285 A.2d 412, 415 (1971)(manifestation of intent must be overt, not subjective); *Friel v. Jones*, Del. Ch., 206 A.2d 232, 233-34 (1964), *aff'd*, Del. Supr., 212 A.2d 609 (1965)(acceptance must be identical with offer and be unconditional); *Salisbury v. Credit Service*, Del. Super., 199 A. 674, 681-82 (1937)(advertisements, prospecti, circulars are not generally offers).

Definiteness: *Marta v. Nepa*, Del. Supr., 385 A.2d 727, 729 (1978); *Hindes v. Wilmington Poetry Soc.*, Del. Ch., 138 A.2d 501, 503 (1958); *Guyer v. Haveg Corp.*, Del. Super., 205 A.2d 176, 182 (1964), *aff'd*, Del. Supr., 211 A.2d 910 (1965).

## DUTY TO MITIGATE DAMAGES -- CONTRACT

## TIPCO AND TRUCK TECH

Generally, the measure of damages for one who is harmed by a breach of contract is tempered by a rule requiring that the injured party make a reasonable effort, whether successful or not, to minimize the losses suffered. To mitigate a loss means to take steps to reduce the loss. If an injured party fails to make a reasonable effort to mitigate its losses, its damage award must be reduced by the amount a reasonable effort would have produced under the same circumstances. This reduction, however, must be measured with reasonable probability.

## PROXIMATE CAUSE

A party's negligence, by itself, is not enough to impose legal responsibility on that party. Something more is needed: the party's negligence must be shown by a preponderance of the evidence to be a proximate cause of the loss.

Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred. A proximate cause brings about, or helps to bring about, the loss, and it must have been necessary to the result. There may be more than one proximate cause of a loss.

Source:
*Wilmington Country Club v. Cowee*, Del. Supr., 747 A.2d 1087, 1097 (2000); *Duphily v. Delaware Elec. Coop., Inc.*, Del. Supr., 662 A.2d 821, 828 (1995); *Money v. Manville Corp. Asbestos Disease Comp. Trust Fund*, Del. Supr., 596 A.2d 1372, 1375-76 (1991); *Culver v. Bennett*, Del. Supr., 588 A.2d 1094, 1099 (1991).

## FORESEEABLE LOSS -- DEFINITION

A foreseeable loss is one that an ordinary person, under the circumstances, would recognize or anticipate as creating a risk of loss.  It is not necessary that the particular loss suffered was itself foreseeable, but only that the risk of loss existed.

Source:
*Delaware Elec. Coop. v. Duphily*, Del. Supr., 703 A.2d 1202, 1209-10 (1997); *Duphily v. Delaware Elec. Coop.*, Del. Supr., 662 A.2d 821, 830 (1995)(quoting *Delaware Elec. Coop. v. Pitts*, Del. Supr., No. 90, 1993, Horsey, J. (Oct. 22, 1993)(Order)).

## DAMAGES -- BREACH OF CONTRACT -- GENERAL

If you find that one party committed a breach of contract, the other party is entitled to compensation in an amount that will place it in the same position it would have been if the contract had been properly performed.  The measure of damages is the loss actually sustained as a result of the breach of the contract.

## INCIDENTAL DAMAGES

In addition to damages for breach of contract and negligence, you may award

compensate the plaintiff for incidental damages.  Incidental damages are reasonable expenses incident to the seller's breach and include expenses reasonably incurred in inspection, receipt, transportation, and care custody of goods rightfully rejected, any commercially reasonable charges, expenses, or commissions in connection with affecting cover and any other reasonable expense incident to the delay or other breach.  If you find

that the plaintiff reasonably incurred those costs in responding to the breach, you should award the fair and reasonable value of those costs as incidental damages.

6. Del. C. § 2-715 (2205).

## EFFECT OF INSTRUCTIONS AS TO DAMAGES
## TIPCO AND TRUCK TECH

The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case. Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order.

## EVIDENCE:  DIRECT, INDIRECT OR CIRCUMSTANTIAL

Generally speaking, there are two types of evidence from which a jury may properly find the facts.  One is direct evidence -- such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence -- circumstances pointing to certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts from all the evidence in the case: both direct and circumstantial.

Source:
*See* 3 Devitt & Blackmar, Federal Jury Practice and Instructions ' 72.03 (4th ed. 1987); Black's Law Dictionary 555-56 (6th ed. 1990); 75A Am. Jur. 2d " 719-720.

23.  EVIDENCE AND GUIDES FOR ITS CONSIDERATIONS

## PRIOR SWORN STATEMENTS
## TIPCO AND TRUCK TECH

If you find that a witness made an earlier sworn statement that conflicts with witness's trial testimony, you may consider that contradiction in deciding how much of the trial testimony, if any, to believe. You may consider whether the witness purposely

33

made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation made sense to you.

Your duty is to decide, based on all the evidence and your own good judgment, whether the earlier statement was inconsistent; and if so, how much weight to give to the inconsistent statement in deciding whether to believe the earlier statement or the witness's trial testimony.


## PRIOR INCONSISTENT STATEMENT BY WITNESS TIPCO AND TRUCK TECH

A witness may be discredited by evidence contradicting what that witness said, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

It's up to you to determine whether a witness has been discredited, and if so, to give the testimony of that witness whatever weight that you think it deserves.


## OBJECTIONS - RULINGS ON EVIDENCE

Lawyers have a duty to object to evidence that they believe has not been properly offered.  You should not be prejudiced in any way against lawyers who make these objections or against the parties they represent.  If I have sustained an objection, you must not consider that evidence and you must not speculate about whether other evidence might exist or what it might be.  If I have overruled an objection, you are free to consider the evidence that has been offered.

Source:
D.R.E. 103(c), 104(c)&(e), 105; *City of Wilmington v. Parcel of Land*, Del. Supr., 607 A.2d 1163, 1170 (1992); *Concord Towers, Inc. v. Long*, Del. Supr., 348 A.2d 325, 327 (1975)(court must avoid giving the impression of favoring one side or other in ruling on counsel's objections).  *See also* 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 70.01 (4th ed. 1987).

## DEPOSITION - USE AS EVIDENCE

Some testimony is in the form of sworn recorded answers to questions asked of a witness before the trial. This is known as deposition testimony. This kind of testimony is used when a witness, for some reason, cannot be present to testify in person. You should consider and weigh deposition testimony in the same way as you would the testimony of a witness who has testified in court.

Source:

*Del. C.* Super. Ct. Civ. R. 32(a); D.R.E. 804(a)(5); *Firestone Tire & Rubber Co. v. Adams*, Del. Supr., 541 A.2d 567, 572 (1988). *See also* 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 73.02 (4th ed. 1987).

## USE OF INTERROGATORIES AT TRIAL

Some of the evidence has been in the form of interrogatory answers. An interrogatory is a written question asked by one party of the other, who must answer the question in writing and under oath, all before trial. You must consider interrogatories and the answers given to them just as if the questions had been asked and answered here in court.

Source:

*Del. C.* Super. Ct. Civ. R. 33(c). *See also* 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 72.19 (4th ed. 1987).

## CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness's credibility. That includes the parties. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witnesses' biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

Source:

*See* 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 73.01 (4th ed. 1987); 75A AM. JUR. 2d " 747, 749, 750.

## EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

{**Comment**: *This instruction should be given following the general instruction on witness credibility -- Jury Instr. No. 22.12.*}

Source:

D.R.E. 701, 702, 703.

## EXPERT OPINION MUST BE TO A REASONABLE PROBABILITY

You have heard experts being asked to give opinions based on a reasonable engineering probability. In Delaware, an expert may not speculate about mere possibilities. Instead, the expert may offer an opinion only if it is based on a reasonable probability. Therefore, in order for you to find a fact based on an expert's testimony, that testimony must be based on reasonable probabilities, not just possibilities.

Source:

D.R.E. 703, 705 (expert testimony); *Van Arsdale v. State*, Del. Supr., 486 A.2d 1, 9 (1984)(medical expert testimony); *Delmarva Power & Light Co. v. Burrows*, Del. Supr., 435 A.2d 716, 720-21 (1981)(testimony of economist); *0.040 Acres of Land v. State* ex rel. *State Hwy. Dep't*, 198 A.2d 7, 11 (1964)(real estate appraisers); *General Motors Corp. v. Freeman*, Del. Supr., 164 A.2d 686, 688-89 (1960)(medical expert testimony).

### INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

I have read a number of instructions to you. The fact that some particular point may be covered in the instructions more than some other point should not be regarded as meaning that I intended to emphasize that point. You should consider these instructions as a whole, and you should not choose any one or more instructions and disregard the others. You must follow all the instructions that I have given you.

Source:

DEL. CONST. art. IV, ' 19; *Culver v. Bennett*, Del. Supr., 588 A.2d 1094, 1096 (1991)(instructions to be considered as a whole); *Sirmans v. Penn*, Del. Supr., 588 A.2d 1103, 1104 (1991)(instructions are not in error if they correctly state the law, are reasonably informative and not misleading judged by common practices and standards of verbal communication); *Dawson v. State*, Del. Supr., 581 A.2d 1078, 1105 (1990)(jury instructions do not need to be perfect); *Probst v. State*, Del. Supr., 547 A.2d 114, 119 (1988)(entire charge must be considered as a whole); *Haas v. United Technologies Corp.*, Del. Supr., 1173, 1179 (1982), *appeal dismissed*, 459 U.S. 1192, 103 S. Ct. 1170, 75 L.Ed.2d 423 (1983); *State Hwy. Dep't v. Bazzuto*, Del. Supr., 264 A.2d 347, 351 (1970); *Cloud v. State*, Del. Supr., 154 A.2d 680 (1959); *Philadelphia B. & W. R.R. Co. v. Gatta*, Del. Supr., 85 A. 721, 729 (1913)(jury is sole judge of facts).

### COURT IMPARTIALITY

Nothing I have said since the trial began should be taken as an opinion about the outcome of the case. You should understand that no favoritism or partisan meaning was

intended in any ruling I made during the trial or by these instructions.  Further, you must not view these instructions as an opinion about the facts.  You are the judges of the facts, not me.

Source:

DEL. CONST. art. IV, ' 19; *Culver v. Bennett*, Del. Supr., 588 A.2d 1094, 1096 (1991)(instructions to be considered as a whole); *Probst v. State*, Del. Supr., 547 A.2d 114, 119 (1988)(same); *Haas v. United Technologies Corp.*, Del. Supr., 1173, 1179 (1982), *appeal dismissed*, 459 U.S. 1192, 103 S. Ct. 1170, 75 L.Ed.2d 423 (1983); *State Hwy. Dep't v. Bazzuto*, Del. Supr., 264 A.2d 347, 351 (1970); *Cloud v. State*, Del. Supr., 154 A.2d 680 (1959); *Philadelphia B. & W. R.R. Co. v. Gatta*, Del. Supr., 85 A. 721, 729 (1913)(jury is sole judge of facts).

## JURY'S DELIBERATIONS

How you conduct your deliberations is up to you.  But I would like to suggest that you discuss the issues fully, with each of you having a fair opportunity to express your views, before committing to a particular position.  You have a duty to consult with one another with an open mind and to deliberate with a view to reaching a verdict.  Each of you should decide the case for yourself, but only after impartially considering the evidence with your fellow jurors.  You should not surrender your own opinion or defer to the opinions of your fellow jurors for the mere purpose of returning a verdict, but you should not hesitate to reexamine your own view and change your opinion if you are persuaded by another view.

Your verdict, whatever it is, must be unanimous.

## [EXCUSE JURY ALTERNATES -- SWEAR BAILIFF]

Source:

*Hyman Reiver & Co. v. Rose*, Del. Supr., 147 A.2d 500, 505-07 (1958)(the private deliberations of the jury should not be a concern of the court).